**David H. GIRDNER, Appellant,**

v.

**Thomas E. ROSE and Margie C. Grissom, Appellees.**

**No. 11–04–00272–CV.**

Court of Appeals of Texas, Eastland.

Nov. 9, 2006.

David L. Hooper, David L. Hooper, Abilene, for appellant.

Gregory Allen, Asbury & Asbury, L.L.P., Paul R. Rotenberry, Law Office of Paul R. Rotenberry, Abilene, for appellees.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a declaratory judgment action concerning the parties' rights to commercial property in downtown Abilene. The trial court conducted a bench trial, found that David H. Girdner had no right or claim to the disputed property, and awarded Thomas E. Rose and Margie C. Grissom damages. We modify two damage calculations and, as modified, affirm the judgment.

## I. *Background Facts*

Charles A. (Charlie) and Margie Grissom owned and operated D & W Furniture in Abilene, Texas, for approximately thirty years. The Grissoms also owned warehouse and storefront space across the street from the furniture store. Girdner rented a portion of this space to operate a funeral home.

Girdner alleged that, when he first began operating the funeral home, he discussed a lease with an option to purchase with Charlie. Girdner told Charlie that he could not enter into a lease until the roof was repaired. Charlie replaced the roof and, according to Girdner, presented him with a lease agreement that included an option to purchase the funeral home property and a portion of the warehouse for $65,000, with seller financing. Girdner testified that the lease was executed in October 1997 and that he took his copy to a local attorney's office for safekeeping.

Charlie passed away in early 2001. Margie sold the furniture store to Thomas E. Rose, a D & W employee, in September 2001. In November, she sold the warehouse to Rose, and she offered to sell the funeral home property to Girdner for $125,000. Girdner declined the offer and, approximately two months later, mailed her a letter referencing the lease and stating his intentions to exercise its purchase option.

Girdner then filed a declaratory judgment action against Margie and Rose to determine his rights to lots 9, 10, 11, and 12. The funeral home was located on lots 11 and 12. Lots 9 and 10 were the warehouse space on which Girdner claimed to have an option. Margie and Rose counterclaimed, seeking reciprocal declaratory relief, contractual damages, and exemplary damages. Girdner began making his rent payments by check with the notation "Lease Lots 9, 10, 11 and 12." Margie did not negotiate the checks because of the conditional notation.[1]

The trial court conducted a bench trial and found that Rose owned the warehouse and awarded him $4,800 for unpaid rent, $8,500 for attorney's fees, and conditional attorney's fees in the event of an appeal. The court further found that Margie owned the funeral home property and awarded her $25,250 for unpaid rent and roofing expenses, $100,000 in exemplary damages, attorney's fees of $35,250, and conditional attorney's fees in the event of an appeal.

## II. *Issues*

Girdner originally challenged the trial court's judgment with six issues, alleging the trial court abused its discretion by:

- denying his jury request,
- denying him the opportunity to seek written discovery,
- awarding exemplary damages without an award of actual damages, and
- awarding attorney's fees to Rose and Margie.

Girdner's third issue complained of the trial court's failure to file findings of fact and conclusions of law. The trial court subsequently filed findings of fact. Issue three, therefore, is overruled as moot. Girdner responded to the trial court's fact findings with a supplemental brief challenging the sufficiency of several of those findings.

## III. *Standard of Review*

A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary

---

1. The trial court ultimately entered an order allowing Margie to deposit the checks into the registry of the court without prejudice to her rights.

or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). Nor may a reviewing court set aside the trial court's determination unless it is clear from the record that the trial court could only reach one decision. *Id.* at 840. Our review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

## IV. *Discussion*

*Did the Trial Court Abuse Its Discretion By Denying Girdner a Jury Trial?*

■ Girdner filed suit in March 2002. The case was originally set for a nonjury trial on October 27, 2003. Girdner's counsel had a scheduling conflict, and the setting was moved to November. Girdner then filed a motion for continuance because of a conflicting trial setting. The trial court granted his motion and reset the trial for February 2004.

In January, Girdner filed an amended petition adding claims of tortious interference and conspiracy. He also served several written discovery requests and notices to depose Margie and Rose. The written discovery responses were due one day before trial, and the depositions were scheduled to start four days later. In February, Girdner filed his second motion for continuance because of a conflicting trial setting.

Margie opposed the continuance and objected to the discovery requests. The trial court continued the trial until April 2004, allowed Girdner to depose Margie and Rose, but disallowed any other discovery except the supplementation of prior discovery responses.

The case was not reached in April, and it was reset for June 2004. In late April, Girdner filed another amended petition. This petition added Kyle Brown and Girdner–Brown Funeral Home as additional plaintiffs, asserted property damage claims from a recent fire, and for the first time requested a jury trial. Margie objected to the jury request and moved to strike or sever the new claims. The trial court severed the new claims and retained the June nonjury setting.

Girdner complains that this decision improperly denied him a jury trial because he complied with Tex.R. Civ. P. 216(a) by making a written jury request more than thirty days before trial was scheduled to begin. Rule 216(a) governs jury requests and provides:

> No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

■ Girdner's request is presumed timely because it was made approximately forty-one days before trial. *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991). Trial courts, however, are not required to honor every jury request simply because it is received more than thirty days before trial. Courts have the discretion to determine what is a reasonable amount of time dependent upon the individual circumstances of each case. *See Wittie v. Skees*, 786 S.W.2d 464, 466 (Tex.App.-Houston [14th Dist.] 1990, writ denied). The party opposing a jury request may rebut the presumption of reasonableness by showing that a jury trial will injure them, disrupt

the trial court's docket, or impede the ordinary handling of the court's business. *Crittenden v. Crittenden,* 52 S.W.3d 768, 769 (Tex.App.-San Antonio 2001, pet. denied).

The trial court found that Girdner's request was untimely because it was made more than two years after suit was filed and less than forty-five days before the fifth setting. The court concluded that the request was a dilatory tactic which would have delayed the trial and injured Margie and Rose. We cannot say that the trial court abused its discretion because the record adequately supports these conclusions. The trial court passed one setting at Girdner's request and granted him two other continuances. Earlier in the year, Girdner filed an amended pleading and served discovery requests shortly before one setting that contributed to its delay. Margie could not negotiate Girdner's rent checks because of his conditional notation. Even though they were being deposited into the registry of the court, every check was returned by the bank because of insufficient funds or because it was stale. Girdner, therefore, was effectively using the disputed property rent-free during the pendency of the litigation. Issue one is overruled.

*Did the Trial Court Abuse Its Discretion By Denying Girdner the Opportunity to Conduct Written Discovery?*

█ Discovery was conducted under level two. Tex.R. Civ. P. 190.3. This rule provides that discovery ends the earlier of thirty days before trial, nine months after the first oral deposition, or nine months after the due date of the first response to written discovery. The earliest written discovery included in the record is Margie's second set of interrogatories and request for production, which were served on February 27, 2003. Because these were her second set of requests, the discovery deadline would have been established with an earlier request. But even using these, the discovery deadline was December 29, 2003.[2]

Rule 190.3 requires that discovery shall be *completed* by the discovery deadline. To comply with this, Girdner was required to serve his written discovery requests by November 28, 2003. Girdner's written discovery requests were not served until January 14, 2004, and his deposition notices were not served until February 5, 2004.

The trial court allowed Girdner to take the noticed depositions—and continued the trial setting to accommodate the depositions—but did not require Margie or Rose to answer the written discovery requests. Girdner complains this constitutes an abuse of discretion but offers no reason why he was unable to timely serve his written discovery requests. He notes that there was no pretrial order establishing discovery deadlines, but the Texas Rules of Civil Procedure are controlling. Girdner chose this schedule by pleading in his original petition that discovery would be conducted under level two. On this record, we cannot say the trial court abused its discretion. Issue two is overruled.

*Did the Trial Court Err by Awarding Exemplary Damages?*

█ Margie sought exemplary damages pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 12.002 (Vernon 2002), "Chapter 12." This statute forbids the fraudulent use of a document or other record to evidence a lien or claim against real or personal property with the intent to cause another to suffer physical injury, financial injury, mental anguish, or emotional distress. The statute authorizes an award of actual damages, court costs, attorney's

2. December 27, 2003, was a Saturday.

fees, and "exemplary damages in an amount determined by the court."

The trial court found that Girdner violated Chapter 12 by knowingly using a document to assert a fraudulent claim against real property with the intent to cause another person financial injury and that Margie lost rental income and incurred attorney's fees. The trial court awarded Margie $100,000 in punitive damages, $25,250 for unpaid rent and unreimbursed roofing expenses, and attorney's fees.

Girdner originally challenged the punitive damage award solely on the basis that the trial court erred by awarding punitive damages under Chapter 12 because it awarded no actual damages under Chapter 12. Subsequent to the parties' original briefing, the trial court filed findings of fact. Girdner responded to the findings of fact with a supplemental brief challenging the Chapter 12 findings because they are "without evidentiary basis" and in his prayer asks this court to reverse the trial court's judgment and remand the case for a retrial. We will treat his supplemental brief as a factual sufficiency challenge and will review the punitive damage award for factual sufficiency and legal authorization.

 A trial court's findings of fact in a bench trial are reviewed for legal and factual sufficiency under the same standards used to review a jury's verdict on jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc., a Div. of Phelps, Inc.*, 835 S.W.2d 190, 196 (Tex. App.-Austin 1992, no writ). The trier of fact is the sole judge of the credibility of

the witnesses and the weight to be given their testimony. *Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

With respect to the Chapter 12 claim, the trial court found:

16. That David Girdner violated Chapter 12 of the Civil Practice and Remedies Code by knowingly using a document to assert a fraudulent claim against real property with the intent to cause another person financial injury.

17. That because of David Girdner's action in violation of Chapter 12 of the Civil Practice and Remedies Code, Margie Grissom lost rental income and incurred attorney's fees.

18. That Margie Grissom is entitled to exemplary damages in the amount of $100,000 because of David Girdner's actions in violation of Chapter 12 of the Civil Practice and Remedies Code.

Girdner claimed an interest in four lots because of a lease with an option to purchase he claimed to have negotiated with Charlie. The evidence sufficiently establishes that no lease was ever executed. First, Girdner could not produce a copy of an executed lease agreement. The original draft lease was prepared by Charlie and Margie's daughter-in-law, Carol Grissom, who is an attorney. She testified that she prepared one draft and that shortly thereafter Charlie told her he was not going through with the deal. She also testified that the unexecuted lease agreement Girdner produced at trial was not the one she drafted.

Girdner explained the lack of an executed lease by saying that his former attorney lost it when he moved and contended that he had spent $73,000 remodeling the property in reliance on a lease. The court was entitled to discount this testimony. Gird-

ner was impeached with his deposition testimony wherein he testified that he had spent only $25,000 and that the remodeling work started before the lease was signed. Furthermore, Girdner's former attorney did not testify. The testimony concerning his records came from Girdner's partner, Kyle Brown, who was working for Girdner's attorney as a paralegal at the time.

Second, there was evidence that Charlie was incapable of signing a document. He was diagnosed with multiple sclerosis in 1978. Several witnesses testified that he was physically incapable of signing anything by 1990 and that he had not signed anything in years.

Finally, Girdner's conduct in 2001 was inconsistent with his lease claim. Girdner and Margie discussed buying the funeral home property twice in 2001. Even though he claimed to have an option to purchase four lots for $65,000 and she was offering two lots for $125,000, he did not raise the lease agreement during either meeting. During their last meeting when she asked for $125,000, he simply inquired if she would finance that price. His only explanation at trial for this silence was that he assumed she knew about the lease agreement. The court could reasonably discount that testimony.

The evidence also sufficiently established that Girdner's actions caused Margie to lose rental income and incur attorney's fees. Margie suffered from multiple sclerosis. Charlie had recently passed away, and she was attempting to sell her Abilene property and move to Weatherford. When Margie refused to finance Girdner's purchase, he sent notice of his intention to exercise the lease's purchase option, and he filed a declaratory judgment action. He also began placing the notation "Lease Lots 9, 10, 11 and 12" on his rent checks that prevented Margie from negotiating them. Eventually, the checks were given to the district clerk's office for deposit in the registry of the court, but every check was returned either because of insufficient funds or because it was stale. Girdner, therefore, used the property rent-free during the period of time he claimed an interest. Girdner's factual sufficiency challenge to the punitive damage award is overruled.

■ We must next decide if the trial court erred by awarding exemplary damages under Chapter 12 without making a specific Chapter 12 actual damage finding. Because the trial court found that the conduct which justified punitive damages also caused actual damage and because the evidence of actual damage is directly and singularly attributable to that conduct, we conclude the trial court's award was appropriate.

Margie concedes that the general rule is that actual damages are a prerequisite to an exemplary damage award. *See Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987). The supreme court has instructed reviewing courts that exemplary damages must be reasonable and proportionate to the amount of harm to the plaintiff and the general damages recovered. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). This indicates that at the very least the conduct justifying punitive damages must have also caused actual damage.

The trial court found that Girdner's conduct caused Margie to suffer lost income but did not specifically state that this lost income was the unpaid rent it awarded Margie. However, the two are necessarily the same because Margie did not claim that Girdner owed her for rent due prior to his attempted option exercise. Her claim was limited to the time period after Girdner attempted to exercise a purchase

option and began placing a conditional notation on his checks. This notation and his failure to make the checks good allowed him to use the property rent-free during the litigation. The cloud his claim created on her title necessarily prevented her from otherwise using the property. Consequently, the trial court's unpaid rent finding is attributable to the same conduct which justified a Chapter 12 punitive damage award, and it was appropriate for the trial court to award exemplary damages. Girdner's fourth issue is overruled.

*Did the Trial Court Abuse Its Discretion by Awarding Rose and Margie Attorney's Fees?*

 Girdner argues initially that an attorney's fee award was inappropriate because he was not given notice as required by TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997). First, this issue was not preserved for review because Girdner made no objection at trial. Second, Section 38.002 applies to contractual claims. Margie and Rose successfully asserted declaratory judgment claims, and Margie prevailed on her Chapter 12 claim. Because these claims also authorize attorney's fees, even if Girdner's contention is correct, it is not dispositive.

Girdner next argues that Rose was not successful on all counts of his counterclaim and that he failed to segregate the time he spent on the various claims. He argues further that Rose's counsel failed to produce sufficient evidence justifying the amount of the award and that it was unreasonable to award $8,500 in fees when Rose was only awarded unpaid rents of $4,800.

 The Declaratory Judgments Act, TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997), provides that trial courts may award reasonable and necessary attorney's fees as are equitable and just. The decision to grant or deny attorney's fees is within the trial court's sound discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). If attorney's fees are authorized for some, but not all, of a party's claims, that party generally has the duty to segregate the recoverable attorney's fees from the unrecoverable attorney's fees. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex.1991). This general rule is subject to an exception. A party is not required to segregate attorney's fees incurred in litigating different claims if the claims involve the same set of facts or circumstances and are intertwined to the point of being inseparable. *Gage Van Horn & Assocs., Inc. v. Tatom,* 26 S.W.3d 730, 733 (Tex.App.-Eastland 2000), *pet. denied,* 87 S.W.3d 536 (Tex. 2002). The exception is applicable in this case. While the parties alleged several claims and causes of action, each involved the same issue: Did Girdner and Charlie execute a written lease with an option to purchase? Rose's counsel was not required to segregate his time between each of the claims and causes of action. Nor is his recovery defeated simply because he only recovered $4,800 in unpaid rents. Rose also successfully removed a cloud on his title.

 Finally, Rose introduced sufficient evidence to support the award. His attorney testified that the hourly rate he charged was reasonable and that he had incurred 57 hours of billable time. He described the type of activities he had undertaken in his representation of Rose and testified that his services were necessary. His testimony was brief, but the trial court was well positioned to ascertain the reasonableness and necessity of counsel's services. The trial court did take a critical look at the attorney's fee requests. We note that the trial court's attorney's fee awards did not include the costs Rose's

or Margie's counsel testified were incurred.

Girdner makes similar challenges to Margie's attorney's fee award. Margie's counsel was not required to segregate his time because the case essentially involved only one issue. The issue of whether adequate notice was given has not been preserved and, because of the alternative basis for an award of attorney's fees, is not dispositive in any event. Counsel's testimony was brief, but as noted, this was a bench trial. The hourly rate Margie's counsel quoted was less than the hourly rate Girdner's counsel testified to during his case-in-chief, the activities he conducted were described similarly, and the time he testified to was comparable.

The trial court's attorney's fee awards do not constitute an abuse of discretion. The trial court had ample information to determine that the requested fees were reasonable and necessary, and in light of the relief obtained, the awards are equitable and just. Issues five and six are overruled.

*Are the Trial Court's Remaining Findings Supported by Sufficient Evidence?*

■ Girdner's supplemental brief contains several additional factual sufficiency challenges. Girdner contends there is insufficient evidence establishing when Rose acquired Lots 9 and 10 and, thus, insufficient evidence to determine the amount of rent Rose was entitled to receive. The warranty deed with vendor's lien transferring Lots 4 through 10 from Margie to Rose was introduced into evidence as Plaintiff's Exhibit No. 18. This document establishes that Rose acquired Lots 9 and 10 on November 26, 2001. Girdner's challenge is overruled.

■ Girdner contends that he agreed to pay $750 per month beginning February 1, 2002, for Lots 9, 10, 11, and 12 and that

his obligation to Margie should reflect a credit for Lots 9 and 10 from the date of Rose's acquisition. This is a defensive issue that was not raised before the trial court and may not be raised for the first time on appeal. Furthermore, there was ample evidence that his rent payment was for Lots 11 and 12 and that the Grissoms simply allowed him to use a portion of the warehouse space. This challenge is overruled.

■ Girdner complains of the trial court's unpaid roofing expense finding, contending that the only evidence to support the unpaid roofing expense finding was that the new roof cost $5,000 and that he only agreed to pay one-half of that amount. Notes from Kyle Brown, Girdner's partner, were read into evidence. These notes indicate that Charlie re-roofed the building at his expense with a verbal agreement that Girdner would reimburse him. The invoice for this job was introduced into evidence and established that Charlie paid $5,933.18. The trial court awarded Margie $3,500 for unpaid roofing expenses. Because it was undisputed that Girdner had paid $2,500 prior to trial, the trial court's award is incorrect and should be modified to $3,433.18. As modified, this finding is affirmed, and Girdner's challenge is overruled.

■ Finally, Girdner complains that the evidence is insufficient to support the finding that he owed Margie $25,450 for unpaid rents because the trial court's findings do not state the time for which these rents were due. Girdner himself testified that he owed Margie $750 per month from February 1, 2002, through trial. The trial court's judgment is dated July 22, 2004. Margie concedes that the rental for this period of time was actually only $21,750 and that the trial court's award erroneously included roofing expenses. Because these expenses cannot be awarded twice,

the unpaid rental award is modified to $21,750 and, as modified, is affirmed. Girdner's challenge is overruled.

■ The Texas Supreme Court has indicated that we should automatically re-evaluate exemplary damages when compensatory damages are reduced. *See Bunton v. Bentley,* 153 S.W.3d 50, 54 (Tex. 2004). Our adjustment is relatively minor. After adjustment, the ratio between the compensatory damages and exemplary damages is approximately 4:1 if the attorney's fees for trial are excluded and approximately 1.6:1 if included. Because of the gravity of Girdner's conduct as discussed in this opinion, the punitive damage award is not grossly disproportionate.

## V. *Holding*

The judgment of the trial court is modified to award Margie $3,433.18 in unpaid roofing expenses and $21,750 for unpaid rent. In all other respects, the judgment is affirmed.