Opinion filed August 7, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed August 7,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00050-CV 

                                                     __________

 

      IN THE MATTER
OF THE ESTATE OF CLIFTON LEWIS TURNER, DECEASED

 



 

                                               On
Appeal from the County Court 

 

                                                          Brown
County, Texas

 

                                                   Trial
Court Cause No. 12,770

 



 

                                                                   O
P I N I O N

 
This is a will contest arising from an application to probate the photocopy of
a missing will.  The trial court conducted a bench trial and ordered the
photocopy admitted to probate.  Finding no error, we affirm.

I. Background Facts








Clifton
Lewis Turner[1] fatally shot
himself on March 2, 2006.  His sister, Betty Glaze, filed an application to
probate a will not produced in court and attached a photocopy of a will that
she contended Lewis executed in 1990.  The will named Glaze executrix and sole
beneficiary of Lewis=s
estate.  Glaze advised the court that she had diligently searched for Lewis=s original will but had
been unable to locate it, that Lewis gave her a copy of his will after
executing the original, and that the attached photocopy was an accurate copy of
the original.  Glaze identified herself, her brother Jack Turner, and her sister
Yvonne Cottrell as the individuals who would inherit Lewis=s estate in the absence of
a valid will.  Jack and Yvonne opposed Glaze=s
application, contending that Lewis revoked the 1990 will before his death.  The
trial court granted Glaze=s
application and admitted the photocopied will to probate.

II.
Issues on Appeal

Jack
and Yvonne challenge the trial court=s
order with three issues.  They contend that Glaze produced legally and
factually insufficient evidence to overcome the presumption of revocation and
that the trial court erred by excluding a statement Lewis made to his daughter
indicating his intention to leave his estate to her. 

                                                                    III. 
Analysis

A. 
Evidentiary Challenge.

Jack
and Yvonne called Courtney Stegemoller as a witness.  Stegemoller was Lewis=s daughter.  She had also
opposed Glaze=s
application for probate, but the trial court dismissed her contest for lack of
standing.  The trial court found that the parent-child relationship between
Stegemoller and Lewis was terminated by court order in 1987 and that she had no
right to inherit any portion of his estate.

Stegemoller
testified that she and her father did not have a significant relationship until
she was eighteen.  She invited him to her high school graduation and thereafter
began seeing him.  Lewis discussed his estate planning during one of their
visits.  When she began to repeat Lewis=s
statement, Glaze asserted a hearsay objection.  Jack and Yvonne responded that
Stegemoller=s
testimony was not hearsay because it was not offered for the truth of the
matter asserted or, alternatively, that it was admissible to show Lewis=s state of mind.  The trial
court sustained the objection and Stegemoller made a bill of review. 
Stegemoller testified that the conversation took place last October and that
Lewis told her Ahe had
taken care of everything, and if he ever did pass away everything would be
[hers].@  This was the
last time she ever spoke with him.

 








1.  Standard of Review.

We
review a trial court=s
decision to admit or exclude evidence for an abuse of discretion.   E.I. du
Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).  We
will reverse the trial court=s
decision only if it acted arbitrarily, unreasonably, or without reference to
any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).  We will uphold the trial court=s ruling if it is within
the zone of reasonable disagreement.  Weatherred v. State, 15 S.W.3d
540, 542 (Tex. Crim. App. 2000).  If we find error, we must conclude that the
error affected a substantial right, thereby probably causing the rendition of
an improper judgment before we can reverse.  Nissan Motor Co. v. Armstrong,
145 S.W.3d 131, 144 (Tex. 2004).

2.  Hearsay.

AHearsay@ is defined as Aa statement, other than one
made by the declarant while testifying at the trial or hearing, offered in evidence
to prove the truth of the matter asserted.@ 
Tex. R. Evid. 801(d).  Jack and Yvonne contend Stegemoller=s testimony was not hearsay
but do not explain why or otherwise brief this point.  It has, therefore, been
waived.  See Morrill v. Cisek, 226 S.W.3d 545, 548-49 (Tex. App.CHouston [1st Dist.] 2006,
no pet.).  Even so, Stegemoller=s
testimony is clearly hearsay.  It was not offered to prove an operative fact,
such as the fact that a conversation occurred, but was offered to show that
Lewis had revoked his will because his statement B
if believed B
indicated a new testamentary intent.  The trial court did not err by finding
that Stegemoller=s
testimony was hearsay.

Jack
and Yvonne argue alternatively that Stegemoller=s
testimony was admissible under the state of mind exception.  Tex. R. Evid. 803(3) provides:

A
statement of the declarant=s
then existing state of mind, emotion, sensation, or physical condition (such as
intent, plan, motive, design, mental feeling, pain, or bodily health), but not
including a statement of memory or belief to prove the fact remembered or
believed unless it relates to the execution, revocation, identification, or
terms of declarant=s
will.  

 








Commentators
have noted that, when this exception is applied to statements made by a
testator, it Aapplies
only to a testator=s
statement that >relates
to the execution, revocation, identification, or terms= of his will.@
2A Steven Goode et al., Texas Practice: Courtroom Handbook on Texas Evidence
515 (2007 ed.) (citing Barnum v. State, 7 S.W.3d 782, 789-90 &
n.5 (Tex. App.CAmarillo
1999, pet. ref=d)).

The
trial court did not err by finding this exception inapplicable.  The challenged
testimony may have been considered relevant to establish that Lewis had
executed a new will naming Stegemoller as his sole beneficiary, but Jack and
Yvonne=s position was
that Lewis died intestate.  Consequently, its exclusion was not harmful to
them.  Alternatively, even though the excluded testimony did not directly refer
to a prior will, the testimony may have been considered relevant to establish
revocation since a bequest to Stegemoller would have been inconsistent with the
terms of Lewis=s1990
will.  But its exclusion cannot be considered harmful on this basis either.  

Two
uninterested witnesses testified that they saw Lewis=s will shortly before his death and well after
Stegemoller and Lewis=s
last conversation.  Betty Webb was Lewis=s
longtime girlfriend. She testified that Lewis showed her his will several times
including the day of his death.  Lewis also showed his will to Webb=s niece, Lisa Sliger, a few
days before his death.  Stegemoller=s
excluded testimony does not directly support Jack and Yvonne=s position that Lewis had
no will but suggest that he had a new one.  Consequently, for Jack and Yvonne
to prevail on their objection, the trial court necessarily had to disregard
Glaze=s, Webb=s, and Sliger=s testimony that Lewis
showed them his will shortly before his death, believe Stegemoller=s testimony that Lewis
intended to leave her his estate, and disbelieve Stegemoller=s testimony that Lewis had
already taken care of everything.  The record does not allow us to conclude
that the admission of Stegemoller=s
testimony would have probably led to such a result.  Issue No. Three is
overruled.

B. 
Legal and Factual Sufficiency Challenges.

Jack
and Yvonne requested and the trial court entered findings of fact.  Jack and
Yvonne contest only the finding that Lewis did not revoke his 1990 will
contending that the evidence is legally and factually insufficient to overcome
the presumption of revocation.

1.  Presumption of Revocation.








When
the original will cannot be located and the will was last seen in the testator=s possession, a presumption
arises that the testator destroyed the will with the intent of revoking it.  Hibbler
v. Knight, 735 S.W.2d 924, 927 (Tex. App.CHouston
[1st Dist.] 1987, writ ref=d
n.r.e.).  The proponent must overcome this presumption by a preponderance of
the evidence.  In re Estate of Glover, 744 S.W.2d 939, 940 (Tex. 1988). 
This can be accomplished with proof of circumstances contrary to the
presumption or with evidence that some other person fraudulently destroyed the
will.  In re Capps, 154 S.W.3d 242, 245 (Tex. App.CTexarkana 2005, no pet.). 
Courts have held that evidence the decedent recognized his will=s continued validity and
had continued affection for the chief beneficiary of his will, without evidence
that he was dissatisfied with the will or had any desire to cancel or change
it, is sufficient proof of circumstances contrary to the presumption.  See
Id. at 245-46; Sparkman v. Massey=s
Estate, 297 S.W.2d 308, 311 (Tex. Civ. App.CDallas
1956, writ ref=d
n.r.e.).

2.  Standard of Review.  

A
trial court=s findings
of fact in a bench trial are reviewed for legal and factual sufficiency under
the same standards used to review a jury=s
verdict on jury questions.  Girdner v. Rose, 213 S.W.3d 438, 445 (Tex.
App.CEastland 2006, no
pet.).  In considering a legal sufficiency challenge, we review all the
evidence in the light most favorable to the prevailing party, indulging every
inference in their favor.  City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005).  In reviewing a factual sufficiency challenge, we consider all of
the evidence and uphold the finding unless the evidence is too weak to support
it or the finding is so against the overwhelming weight of the evidence as to
be manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986).  

3.  The Evidence.

Lewis
was divorced and lived alone.  He and his former wife had one daughter but his
parental rights were terminated in 1987.  The parties stipulated that Lewis
executed a valid will in 1990 and that the photocopied will attached to Glaze=s application was a true
and correct copy of that will.  Lewis showed his will to a number of people. 
Glaze saw it less than one week before his death.  Webb saw it the day he
died.  Sliger saw and read it in late February.








Webb
was with Lewis for several hours the day that he shot himself.  She arrived at
his house at three o=clock
in the afternoon.  They went and checked his cattle, stopped at her brother=s house, and were back at
his home at seven.  Lewis showed her his will and then returned it to its usual
storage location:  a three-shelf wall unit typically used for items such as
letters and bills.  He sat down in his recliner and watched television for one
and one-half hours before going to his bedroom. When Webb went to check on him,
he asked her to leave.  She heard a shot.  She ran back into the bedroom.  When
she realized what had happened, she called 911 and Glaze.

When
police and emergency personnel arrived, Webb was taken outside and was not
allowed to reenter Lewis=s
house.  Glaze and her husband Bill Glaze went to Lewis=s house in response to Webb=s call but were not allowed
to enter either.  Lewis was taken to the Brownwood hospital and was then
airlifted to San Angelo.  Glaze and her husband drove to San Angelo.  Jack and
Yvonne were called, and they too went to the San Angelo hospital.  Lewis shot
himself Thursday night and was pronounced dead late Friday night.  Everyone
returned home early Saturday morning after completing paperwork.  Webb, Glaze,
and Bill went to a local funeral home that morning to arrange for Lewis=s burial.  While they were
there, Jack called and asked to borrow Lewis=s
house key.  Jack went inside Lewis=s
house and looked around.  He noticed that Lewis=s
gun cabinet was empty.  The cabinet had been locked and contained several guns
when the police were there.  Jack also noticed that there was no evidence of
the shooting.  Jack testified that Bill arrived while he was still there and
told him that he had cleaned up Lewis=s
bedroom and that there were no guns in the cabinet because Lewis had previously
sold them.  Bill, however, denied being in Lewis=s
house, denied cleaning up the shooting, denied knowing anything about Lewis=s guns, and denied telling
anyone otherwise.

Stegemoller
admitted entering Lewis=s
house after the funeral.  She testified that she and her husband Josh briefly
looked around and that they took Lewis=s
dog, but she denied taking anything else.  Other testimony put her there days
sooner.  Robert Johnson, Lewis=s
neighbor and friend, testified that he saw an unknown man and woman at Lewis=s house on Saturday.  They
introduced themselves as Lewis=s
daughter and AJack.@  Johnson also testified
that he saw three or four teenagers or young adults rummaging around in Lewis=s house the day he shot
himself.  They arrived after the police had left and were there for at least
one-half hour before he went to bed. 








Glaze
discovered on Saturday that Lewis=s
will was not in the folder where he normally kept it.  She searched the
remainder of the house and a second house that he owned and had previously
lived in.  Bill looked through two boxes of Lewis=s
paperwork.  Glaze then went through Lewis=s
trash.  They were unable to locate the will.

When
all the evidence is reviewed in the light most favorable to the trial court=s order, it is legally
sufficient to overcome the presumption of revocation.  There was testimony of a
close relationship between Lewis and Glaze but not Jack and Yvonne, and no
evidence of a Afalling
out@ or other recent
discord.  Lewis=s will
left everything to Glaze.  Lewis also named her his beneficiary on
non-testamentary assets including a bank account and an investment account. 
What happened to the original will is unclear, but there was no evidence that
he physically destroyed it.  In fact, several witnesses testified that Lewis
showed it to them shortly before his death.   There was also no evidence that
he made any changes to his non-testamentary asset beneficiary designations. 
Issue No. One is overruled.

The
evidence is also factually sufficient.  The question of what happened to the
original will has understandably bedeviled the parties.  Jack and Yvonne spend
much of their brief directing our attention to evidence that indicates they did
not destroy it and to evidence that contradicts the testimony of other
witnesses.  For example, they question Johnson=s
testimony about four teenagers being in Lewis=s
house after the police left, pointing out that nothing was broken into and that
the teenagers would not have turned on the lights as Johnson described if they
were attempting to vandalize the house.  They point to evidence that Webb,
Glaze, and Bill had immediate access to Lewis=s
house but that they did not.  They note that, according to Jack=s testimony, Lewis=s bedroom had already been
cleaned and Lewis=s
guns taken before he ever entered the house and contend that Bill was lying to
the court.  They also contend that Webb=s
credibility is questionable because of alleged inconsistencies between her
trial testimony and her conduct shortly after Lewis=s death. 

Jack
and Yvonne=s argument
invites this court to reassess the credibility of the witnesses.  This we may
not do.  In a bench trial, the trial court, as factfinder, is the sole judge of
the credibility of the witnesses and the weight to be given their testimony.  Nat=l Freight, Inc. v. Snyder,
191 S.W.3d 416, 425 (Tex. App.CEastland
2006, no pet.).  The court may accept or reject all or any part of that
testimony.  Nordstrom v. Nordstrom, 965 S.W.2d 575, 580-81 (Tex. App.CHouston [1st Dist.] 1997,
pet. denied).








The
trial court could reasonably find the presumption of revocation was rebutted
with evidence of fraudulent destruction or with proof of circumstances contrary
to the presumption.  If Johnson=s
testimony is believed, four teenagers were in Lewis=s house the night he shot himself and
Stegemoller and her husband were there shortly after Lewis=s death.  The trial court
could reasonably accept this testimony and conclude that the will was taken as
part of a robbery or vandalism or that Stegemoller took it because it did not
name her as a beneficiary.  The court could have also concluded that Bill=s testimony was more
credible than Jack=s
and determined that Jack took the will when he was alone in Lewis=s house Saturday morning.

Alternatively,
the court could have found Webb=s,
Sliger=s, and Glaze=s testimony credible and
concluded that the surrounding circumstances were inconsistent with
revocation.  No witness questioned the relationship between Glaze and Lewis. 
The trial court could consider the lack of any significant discord between
them, the fact that Lewis showed his will to at least three people in the week
before his death, and that Lewis made no changes to any of his non-testamentary
asset beneficiary designations and could have reasonably concluded that Lewis
did not revoke the 1990 will.

The
trial court was presented with conflicting evidence on what Lewis may have said
or done with regard to his estate planning, on who had access to his house and
when, and on whether individual witness=s
testimony was credible.  The trial court=s
resolution of this conflicting evidence in favor of probating the will was
predicated upon factually sufficient evidence.  Issue No. Two is overruled.

IV. 
Holding

 The
trial court=s order
admitting the will to probate is affirmed.

 

 

RICK STRANGE

JUSTICE

August 7, 2008

Panel consists of:   Wright, C.J.,

McCall, J., and Strange, J.









[1]Mr. Turner went by ALewis.@  To avoid confusion, we will refer to him as Lewis and
to his brother Jack Turner as Jack.