NUMBER 13-09-00201-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

RAMON LUNA, RODOLFO LUNA, INDIVIDUALLY

AND AS PARTNERS IN LUNA BROTHERS 

PARTNERSHIP,                                                                                    
Appellants,

 

v.

 

ROBERTO LUNA,                                                                
          Appellee.

                                                                                                                             

 

On appeal from the County
Court at Law No. 6

 of Hidalgo County, Texas.

                                                                                                                             

 

DISSENTING MEMORANDUM
OPINION

 

Before Justices
Garza, Vela, and Perkes

Dissenting Memorandum
Opinion by Justice Garza

 

            The majority reverses the
trial court’s judgment in favor of appellee, Roberto Luna, because it finds: 
(1) the evidence is legally and factually insufficient to support the trial
court’s finding that the parties negotiated the five-acre tract at issue for
Roberto’s  exclusive benefit; and (2) that Roberto waived his breach of
fiduciary duty, fraud, and breach of contract claims by failing to
obtain findings as to those claims.  I would find the evidence is legally and
factually sufficient to support the trial court’s findings and accordingly, I
respectfully dissent. 

I.  Background

A.  The Pleadings 

            This case involves a dispute
between three brothers—Roberto and appellants, Ramon and Rodolfo Luna—over the
equitable distribution of property held by Luna Brothers Partnership (“Luna
Brothers”).  The witnesses at trial included the three Luna brothers, plus the
widow and son of another brother and partner, Romulo Luna Sr.,[1]
now deceased.[2] 


            The majority infers a
breach of contract claim from Roberto’s pleadings, but finds the evidence
insufficient to support such a claim, and concludes that Roberto waived his
fraud and breach of fiduciary duty claims by failing to obtain findings.[3] 
I agree that we may reasonably infer a breach of contract claim from Roberto’s pleadings. 
Specifically, Roberto’s pleadings stated, in relevant part:

6.  On or about 1979, Rodolfo Luna,
Ramon Luna, Lito Luna Jr. [sic] and Roberto Luna entered into a partnership and
formed Luna Bros. Partnership.  The partnership was for the primary purpose of
farming and agriculture.  In 1982, the partnership lost one of its partners. 
Notwithstanding, the partnership continued.  They accumulated vast amounts of
land.

 

7.  Pursuant to their oral
agreement[,] the profits of the partnership were to be divided between and
among the partners according to each of the partnership interest.  The
following percentages represent each partner’s interest:

 

            Rodolfo Luna -  33 1/3%

            Ramon Luna -  33 1/3%

            Roberto Luna – 33 1/3%

 

8.  During the term of the
partnership[,] some land was divided as follows:

 

            Rodolfo Luna -  40 acres

            Ramon Luna -  40 acres

            Roberto Luna -  35 acres

 

            This was not in line with
the oral agreement.  The Luna Brothers later purchased another 5 acres from
Lito Luna[’s] son, that was to be for Roberto Luna and was agreed upon. 
Purchase of the land was witnessed by Olivia Luna and Roy Luna. 

 

I disagree, however, with the
majority’s holding that the evidence is legally and factually insufficient to
support the trial court’s findings of fact and conclusions of law.  

B.  The Trial Court’s Findings and
Judgment

            The trial court’s
“Findings of Fact and Conclusions of Law” stated, in their entirety:

            The Court, after hearing
all the witnesses and considered [sic] all the evidence and arguments of
counsel, finds that some witnesses appeared to be less than truthful and with
unclean hands.

 

            The Court further finds
that Plaintiff and Defendants negotiated the five (5) acre land at issue for
the exclusive benefit of Robert Luna.

 

            The trial court’s judgment
stated:

            The court, after hearing
the evidence and arguments of counsel, is of the opinion that the plaintiff is
entitled to recover from the defendants.

 

            IT IS THEREFORE ORDERED by
the court that ROBERTO LUNA be awarded 5 acres which is subject of suit from
LUNA BROTHERS PARTNERSHIP or RAMON LUNA and RODOLFO LUNA. 

 

            A trial court's judgment
must conform to the pleadings. Tex. R.
Civ. P. 301.[4] 
Pleadings must give reasonable notice of the claims asserted.  Moneyhon
v. Moneyhon, 278 S.W.3d 874, 878 (Tex. App.–Houston [14th Dist.] 2009, no
pet.) (holding judgment did not conform to pleadings where judgment awarded
title based on breach of fiduciary duty but plaintiff’s petition did not allege
breach of fiduciary duty) (citing SmithKline Beecham Corp. v. Doe, 903
S.W.2d 347, 354-55 (Tex. 1995)).  A reviewing court should liberally construe
the petition to contain any claims that reasonably may be inferred from the specific
language as used in the petition and uphold the petition as to those claims,
even if an element of a claim is not specifically alleged.  Id.  In
making this determination, however, a reviewing court cannot use a liberal
construction of the petition as a license to read into the petition a claim
that it does not contain.  Id.  The petition must give fair and adequate
notice of the claims being asserted, and, if the reviewing court cannot
reasonably infer that the petition contains a claim, then it must conclude the
petition does not contain this claim, even under a liberal construction.  Id. 


            Here, Ramon and Rodolfo
did not challenge Roberto’s pleadings by special exceptions.  When a party
fails to specially except, courts should construe the pleadings liberally in
favor of the pleader.  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d
887, 897 (Tex. 2000).  The court will look to the pleader’s intent and will
supply every fact “that can reasonably be inferred from what is specifically
stated.”  Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982).  

            The pleadings, findings,
and judgment in this case are not models of clarity.  The witnesses provided
testimony that was inconsistent, unclear, and confusing.  During Roberto’s
testimony, he drew a map for the trial court’s benefit, showing the location of
various parcels of land owned and traded by the brothers, but the map was not
included in the record and is not available to assist us in making sense of the
testimony.  Nonetheless, it is clear from the trial testimony—and I believe it
was clear to the trial court—that the only issue to be decided by the court was
whether Roberto was entitled to the five-acre tract on the grounds that:  (1)
Luna Brothers was dissolving; (2) other partnership land had been equally divided,
leaving only the five-acre tract at issue; (3) Roberto was “short” five acres
from the earlier partition, in which he ended up with 35 acres and Rodolfo and
Ramon each received 40 acres; and (4) the brothers’ oral agreement that
partnership profits and assets were to be divided equally dictated that Roberto
be awarded the five acres to equalize the earlier distribution.  

            The majority focuses—as
appellants argue—on whether there was a specific agreement regarding the five
acres that were purchased that Roberto would receive them.  Roberto conceded
that there was no such agreement.  Roberto admitted that the deed to the
five-acre tract was in Luna Brothers’ name, that the land was purchased with
partnership money, and that he did not tell Rodolfo and Ramon that he viewed
himself as entitled to the property when it was purchased.  However, it is
clear from the testimony that Roberto’s claim is not that he and his partners explicitly
agreed when the property was purchased that it was his.  Rather, his claim is
that their earlier agreement—the oral agreement to equally divide partnership
profits—dictates that he is entitled to the property to make him whole for the
earlier unequal distribution.  Thus, because Roberto’s claim to the property is
grounded in the partners’ long-standing oral agreement, the absence of an
explicit agreement at the time the property was purchased is of little
consequence.  After hearing all the evidence, and judging the credibility of
the witnesses, as it was entitled to do, the trial court agreed with Roberto.  

C.  Issues on Appeal

            On appeal, appellants
characterize their issues as follows:

(1)        Whether the trial court erred in
entering a judgment granting the 5 acres the subject of the litigation to
appellee/plaintiff when the          sworn testimony of both plaintiff and
defendants conclusively          established that an agreement was never negotiated
by the parties.

 

(2)        Is [sic] the trial court’s
findings of fact that “Plaintiff and Defendants            negotiated the five
(5) acre (sic) land at issue for the exclusive           benefit of Robert
Luna” against the great weight and   preponderance of the evidence.

 

            I would construe the trial
court’s findings to mean that (1) the trial court believed some witnesses and
disbelieved others; and (2) pursuant to the partners’ oral agreement to equally
split partnership assets, Roberto is entitled to the five acres in order to
make him whole for the earlier unequal distribution.  Accordingly, I would
review the record to determine if the evidence is legally and factually
sufficient to support the trial court’s findings. 

II. 
Standard of Review and Applicable Law  

            When findings of fact are challenged on
appeal, we utilize the same standards that we apply in reviewing jury findings.
Wiese v. Pro Am Servs., 317 S.W.3d 857, 860 (Tex. App.–Houston [14th
Dist.] 2010, no pet.).  When both the legal and factual sufficiency of the
evidence are challenged, we first review the legal sufficiency of the evidence
to determine whether there is any evidence of probative value to support the
factfinder’s decision.  Wiese, 317 S.W.3d at 860.  In a legal
sufficiency or no evidence review, we determine whether the evidence would
enable reasonable and fair-minded people to reach the finding under review.  Id.
(citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).  In
conducting this review, we credit favorable evidence if reasonable factfinders
could and disregard contrary evidence unless reasonable factfinders could not.  City
of Keller, 168 S.W.3d at 827.  We must consider the evidence in the light
most favorable to the finding under review and indulge every reasonable inference
that would support it.  Id. at 822.  We must, and may only, sustain no
evidence points when either the record reveals a complete absence of evidence
of a vital fact, the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, the evidence offered
to prove a vital fact is no more than a mere scintilla, or the evidence
establishes conclusively the opposite of the vital fact.  Id. at 810.  

            In
reviewing factual sufficiency, we consider all of the evidence and uphold the
finding unless the evidence is too weak to support it or the finding is so
against the overwhelming weight of the evidence as to be manifestly unjust.  Girdner
v. Rose, 213 S.W.3d 438, 445 (Tex. App.–Eastland 2006, no pet.); Gentry
v. Squires Constr., Inc., 188 S.W.3d 396, 408 (Tex. App.–Dallas 2006, no
pet.).  The trier of fact is the sole judge of the credibility of the witnesses
and the weight to be given their testimony.  Girdner, 213 S.W.3d at 445;
Gentry, 188 S.W.3d at 408.  The amount of evidence necessary to affirm a
judgment is far less than that necessary to reverse a judgment.  Gentry,
188 S.W.3d at 408.

            It is
presumed that all fact findings needed to support the judgment were made by the
trial court.  Id.  After the trial court files its original findings of
fact and conclusions of law, any party may file a request for specified
additional or amended findings or conclusions with the clerk of the court.  Id.
(citing Tex. R. Civ. P. 298). 
The failure of a party to request additional or amended findings or conclusions
waives the party’s right to complain on appeal about the presumed finding.  Id. 


III. 
The Evidence

            The trial
court heard the testimony of five witnesses, in this order:  defense witnesses
Rodolfo and Ramon, followed by plaintiff’s witnesses Roberto, Romulo Luna Jr.
(son of the eldest Luna brother, Romulo Sr.), and Olivia Luna, Romulo Sr.’s
widow.[5] 


A.  Rodolfo Luna

            In the
late 1970s, the five Luna brothers decided to distribute property held by Luna
Brothers partnership.  Roberto, who chose second, chose a tract containing
thirty acres.  Rodolfo chose third, and chose a tract containing forty acres. 
Rodolfo then gave Roberto five acres, leaving each with thirty-five acres. 
Each of the three other brothers received forty-acre tracts.  At some point,
Rodolfo and Romulo Sr. traded parcels, leaving Romulo Sr. with thirty-five
acres and Rodolfo with forty acres.  Later, Roberto traded some property with
Romulo Sr.  After these trades, Roberto and Romulo Sr. each had thirty-five
acres, and the other three brothers had forty acres.  In the early 1980’s,
Romulo Sr. died and willed five acres to his son, Roy.[6]
 Roy then sold the five acres to Luna Brothers.  

            On
cross-examination, Roberto’s counsel attempted to establish that Roberto
“actually farmed those five acres,” but Rodolfo said that the brothers “worked
together” in farming the tract.  Roberto’s counsel also asked Rodolfo whether
he had attempted to get Romulo Jr. to sign over some land.  Rodolfo said that
some paperwork had been drawn up, and that they had paid Olivia some money for
the land.  Rodolfo said that Roberto told him to get Romulo Jr. to sign the
paperwork because “they” had already made some payments.[7] 
In response to Roberto’s counsel’s questions as to whether “everything has been
split up,” Rodolfo responded affirmatively and said that “everybody got equal.”

B.  Ramon Luna

            Ramon’s
testimony did not differ significantly from Rodolfo’s.  When Luna Brothers
purchased the five acres from Roy, Roberto did not tell them that he viewed the
five acres as his.  Ramon said that Luna Brothers has always paid the taxes and
that they “farmed it together.”  Ramon worked on the five acres, along with his
son and nephew.  According to Ramon, Roberto paid Luna Brothers’ rent on the
property for three years, and then refused to continue paying rent.  Ramon
suggested that Roberto would not have paid rent if he believed the property was
his.  

            On
cross-examination, Ramon said that he wanted to retire in 2000, but planned to
keep on farming.  He also stated that “everything we [Luna Brothers] bought was
between us.  We  would agree.”

C.  Roberto Luna 

            Roberto testified
that when he was seventeen, he dropped out of school to help his father and
Romulo Sr. farm their property.  At the time, Rodolfo and Ramon were in
school.  Roberto testified that after the initial distribution of property, he
and Romulo Sr. traded some property, and he also gave five acres of his own (“not
part of Luna Brothers”) to Romulo Sr.  Roberto said Rodolfo’s testimony that he
had exchanged property with Romulo Sr. was not true; Roberto and Rodolfo had
exchanged property, not Rodolfo and Romulo Sr.  When Romulo Sr. died, and Roy
inherited five acres from his father, Roberto spoke to Roy about Luna Brothers
purchasing the five acres.  Roberto spoke to Roy’s mother, Olivia, about who
should pay for the five acres.  Roberto told Olivia that Luna Brothers should
pay for the land (instead of Roberto individually) because the other brothers
had each received forty acres of Luna Brothers’ property.  When Roberto was
asked whether he “negotiated this deal with Roy Luna and with Olivia,” he said,
“yes.”  Specifically, Roberto testified that he told Olivia:  

“I cannot buy the land because my
brother has got 40 acres and Luna Brothers paid for those 40 acres.  Why should
I pay for this five acres?  Let Luna Brothers pay for the five acres.” 
Otherwise, if I had known that I wasn’t going to get that, I would have kept
that five acres.

 

Roberto said he did
not tell his brothers that even though he was purchasing the property with Luna
Brothers funds, he viewed it as his own.  Roberto stated that the five acres is
adjacent to his property.  Roberto said that on every partnership deal he made,
he “was always thinking of the one-third, Luna Brothers.  That’s the contract
we’ve got there.”  Roberto said that he “always counted [his brothers] in,”
even though he “could have left them out a long time ago.”  Roberto’s brothers
“got mad at [him]” because they wanted to sell some property near Laguna Seca
and retire, but Roberto did not want to sell the property.  Instead, Roberto
told the realtor that he wanted “more land,” and he continued to acquire
additional land for the partnership.  Roberto said that even though he had acquired
an additional 871 acres for Luna Brothers, his brothers “can’t even give me
five acres that I deserve.”  According to Roberto, his brothers have been
semi-retired since 2000 and “only worked when they wanted to.”  Roberto said
that Rodolfo “barely worked” in 2000, but he never confronted Rodolfo about not
working.  When his brothers were absent, Roberto and his son did the work because
it “has to be done.”  Roberto paid rent on the five acres because he just
“wanted to farm” and paid so he could “work the land.”  Roberto paid the taxes
and did “most of the work” farming the five acres.

            Roberto
said Rodolfo was “lying” when he testified that Roberto had instructed him to
try to get Romulo Jr. to sign a release.  Roberto said he “didn’t even know
about it” and that if Romulo Jr. had signed the release, they (presumably
Romulo Jr. and Olivia) would have lost sixteen acres.  When Roberto was asked
if he purchased the five acres “to make [him] whole,” Roberto answered, “To
make up for the ones that were supposed to be mine, that were mine.  Those were
mine.”  

            On
cross-examination, appellants’ counsel confirmed Roberto’s testimony that when
he purchased the five acres, he did not discuss with appellants that he viewed
the property as his own.  When asked why he initially chose a thirty-five-acre
tract instead of a forty-acre tract, Roberto said, “but we were not splitting,
like we’re doing it right now.”  He noted that if the earlier partition had
been for the purpose of making a final division of partnership property, “then
all the deals, they were going to be different.”  The trial court questioned
Roberto as follows: 

[The Court]:  Is your testimony that
it was split in that sense because there                       was some other
property still belonging to the partnership?

 

[Roberto]:       Right.

 

[The Court]:  That could be divided
to add on to this?

 

[Roberto]:       Right.

 

[The Court]:  To where everyone would
get equal shares?  Is that what                              you’re saying?

 

[Roberto]:       Yes, sir.

 

            On
re-direct examination, Roberto said the purpose of the earlier partition was so
that the brothers individually would have property in their names to use as
collateral if they so desired.  Roberto said, “[o]therwise, we would have
divided equally, every—like we’re doing right now . . . .”  In 2000, Ramon
“threw the books at [Roberto]” and “didn’t want to do anything with Luna
Brothers.”  After that, Roberto took care of the books, “had to take care of
the workers, bring them home and everything.”  Rodolfo occasionally threatened
Roberto that he would call his lawyer and told Roberto , “We’re two, and you’re
only one.”  

            Roberto
farmed the five acres together with adjacent land from Romulo’s estate and some
acreage out of his own thirty-five acres.  One year, he was farming the five
acres and “they went in and destroyed what I had planted.  They didn’t let me
finish the crop, you know, because they said it was theirs.”  

            On
re-cross-examination, appellants’ counsel noted that Romulo Sr. had also
received thirty-five acres, and therefore Roberto was not “the only one that
ended up with 35 acres.”  Roberto responded, “Right, because we weren’t
dividing.  We weren’t splitting up.  We still had more land to make up for the
ones that didn’t—that didn’t get the 40 acres.  We had more land.”  

D.  Romulo Luna Jr. 

            Romulo Jr. testified
that on several occasions, Rodolfo and Ramon came to his workplace to try to
get him, his mother, and sister to sign a release of lien on land that they
owned.  Romulo Jr. spoke to Roberto about the visits; Roberto told him not to sign
the release and that Ramon and Rodolfo should not have approached him.  Romulo
Jr. testified that Ramon and Rodolfo were pressuring him to sign the release. 
He felt they were not dealing with him honestly and that he “was being betrayed
by [his] own family.”  

            On
cross-examination, Romulo Jr. admitted he did not actually see the documents
that Rodolfo and Ramon were pressuring him to sign.  On re-direct examination,
Romulo Jr. said he cannot trust Rodolfo and Ramon.  

E.  Olivia Luna

            Olivia testified that
when Roberto discussed purchasing the five acres from Roy, Roberto said he was
purchasing the land “to complete his 40 acres because everybody else had 40
acres.”  Olivia said that after her husband died, Ramon and Rodolfo told her
that there was no longer any right to land held in Romulo Sr.’s name in Encino
and El Coyote.  

IV.  Discussion

            On appeal,
appellants have challenged only the sufficiency of the evidence supporting the
trial court’s findings.[8] 
As to the challenged findings, the trial court heard evidence that:  (1) on
every transaction negotiated by Luna Brothers, Roberto was always “thinking of
the one-third, Luna Brothers,” because “[t]hat’s the contract we’ve got there”;
(2) except for the five acres, the partners had split the partnership land
equally; (3) Roberto claimed he was entitled to the five acres because Rodolfo
and Ramon received 40 acres in the earlier partition and he only received 35
acres; (4) because the initial partition was not a final division of
partnership property, there was no need for the division to be equal at that
time because shares could be later equalized by dividing additional partnership
land; (5) Roberto paid taxes on the five acres and farmed it; (6) in recent
years, Roberto did most of the work farming land for Luna Brothers; and (7)
without Roberto’s knowledge, Rodolfo and Ramon attempted to obtain a release of
lien on property from Romulo Jr.  

            The evidence
favoring appellants was:  (1) in the initial partition, Roberto voluntarily
chose a thirty-five-acre tract, even though he could have chosen a forty-acre
tract; and (2) when Roberto purchased the five acres with Luna Brothers funds,
he did not discuss with Rodolfo and Ramon that he viewed the property as his
and there was no agreement that it was purchased for his benefit.  

            The trial
court was in the best position to judge the credibility of the witnesses and we
should not substitute our judgment for that of the trial court.  See Gentry,
188 S.W.3d at 408.  I would hold that the evidence is legally and factually
sufficient to support the trial court’s findings.  

V.  Conclusion

            I
would
overrule appellants’ issues and affirm the trial court’s judgment.

 

 

DORI CONTRERAS GARZA

Justice

 

Delivered
and filed the

28th
day of April, 2011.









[1]
Romulo Luna Sr. is also referred to as “Lito.”

 





[2]
A fifth brother, Refugio Luna, also known as “Cuco,” was also a partner in Luna
Brothers, but left the partnership at some earlier time.  The record is silent
as to what property or partnership assets, if any, were distributed to Refugio
at that time. 

 





            [3]
Roberto’s
breach of fiduciary duty claim is stated as follows:

Plaintiff had a
fiduciary relationship with defendant.  Plaintiff was a partner in the Luna
Brothers Partnership.  Defendants owe a Fiduciary Duty to Plaintiff.

 

Defendant breached
Defendant’s fiduciary duty to Plaintiff by not giving Plaintiff his 5 acres
Plaintiff is due.

 

According to the oral
agreement of 33 1/3% for each partner, Defendant’s breach of fiduciary duty
injured plaintiff by not allowing Plaintiff the use and ownership of the land
….

 

Roberto’s
fraud claim is stated as follows:

In addition to other
counts, defendant committed fraud, by stating that it was another deal.  This
is with malice and fraud.

 

Roberto
also stated a claim for “equitable relief” as follows:

Plaintiff seeks that
Defendants tender the 5 acres over to Roberto Luna which is equitable.  Ramon
Luna has received 40 acres, Rodolfo Luna has received 40 acres, Roberto Luna
received only 35 acres and the other 5 acres had not been tendered.  It is with
Malice and Fraud that the Defendants have conducted their agreement to
Plaintiff, regarding the division of property.  

 





[4]
Rule of civil procedure 301 provides, in pertinent part:  “The judgment of the court shall conform to the pleadings,
the nature of the case proved and the verdict, if any, and shall be so framed
as to give the party all the relief to which he may be entitled either in law
or equity.”  Tex. R. Civ. P. 301.  





[5]
There is no explanation as to why the defense presented its witnesses first. 





 

[6]
Roy was deceased at the time of trial.

 





[7]
It is not clear who “they” refers to; presumably, either Rodolfo and Ramon or
Luna Brothers.





[8]
In the argument section of their brief, appellants essentially make the same
argument:  that Roberto’s own testimony “conclusively establish[ed] the fact
that no agreement or representation were ever made that the 5 acres were being
purchased for [Roberto’s] exclusive benefit.”  I construe this argument as a
no-evidence challenge to the trial court’s findings.  See City of Keller v.
Wilson, 168 S.W.3d 802, 810 (Tex. 2005) (noting that we sustain a no
evidence challenge when, among other circumstances, the evidence establishes
conclusively the opposite of the vital fact).