**Opinion filed February 5, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-07-00152-CV

———————

## ROUGH CREEK LODGE OPERATING, L.P. D/B/A ROUGH CREEK LODGE, AND ROUGH CREEK INVESTORS GP, LLC, Appellants

### V.

## DOUBLE K HOMES, INC., Appellee

**On Appeal from the 266th District Court of**

**Erath County, Texas**

**Trial Court Cause No. CV28178**

### O P I N I O N

This suit arises out of a contractual dispute involving remodeling projects at a resort owned and operated by Rough Creek Lodge Operating, L.P. d/b/a Rough Creek Lodge, and Rough Creek Investors GP, LLC. The jury found in favor of the contractor, Double K Homes, Inc., and awarded actual damages of $26,245.14. We affirm.

I. *Background Facts*

Rough Creek is a luxury resort covering 11,000 acres. Double K is a home builder and general contractor. Rough Creek's resident manager, Frank Alvarez, approached Double K's owner,

Bill Cathey Jr., to discuss a remodeling project at the resort. They reached an oral agreement, and Double K began remodeling Rough Creek's Spa. Alvarez later asked Cathey to do some additional remodeling, and Cathey agreed to do so for costs plus 10%. Double K did several remodeling projects for Rough Creek. In late February 2005, Double K was nearing completion of its work, and Cathey submitted a draw request for $37,175. Rough Creek paid $22,000 initially and subsequently $4,000 more.

Whether because of Cathey's draw request or otherwise, the parties had several disagreements in March about their respective responsibilities, and Rough Creek retained another contractor to finish the outstanding projects. Double K sent a demand for payment. When it was not paid, Double K filed a mechanic's lien and then filed suit seeking contractual damages, attorney's fees, and foreclosure of its lien. Rough Creek counterclaimed, contending that Double K did not perform timely and in a workmanlike manner.

## II. *Issues*

Rough Creek challenges the judgment with four issues. Rough Creek contends that the evidence is legally and factually insufficient, that the trial court erroneously utilized a broad-form liability question, and that the trial court erred when it denied Rough Creek leave to file a trial amendment adding the defense of excessive demand.

## III. *Analysis*

### A. *Sufficiency of the Evidence*.

Rough Creek argues that the jury charge required Double K to prove that it completely performed all required work and that, because there was evidence that some of the remodeling projects were uncompleted, the evidence is legally or factually insufficient to support the jury's verdict.

#### 1. *Standard of Review*.

When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 821-22 (Tex. 2005). When conducting a factual sufficiency review, we consider all of the evidence and uphold the jury's finding unless the evidence is too weak to support it or the

2

finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

### 2. *The Charge*.

The first question asked: "Do you find that Double K Homes, Inc. completely performed all of the work required under its construction agreements with Rough Creek Lodge?" The jury was instructed in the charge that a contractor could suspend its work or be excused from further performance in certain circumstances[1] and that completion of a contract means "the actual completion of the work, other than replacement or repair of the work performed under the contract."

### 3. *The Evidence.*

There were no written agreements between Rough Creek and Double K. Under the charge, the jury was required to first determine what work the oral construction agreements required and, then, whether Double K completed them or was excused from complete performance. The parties disputed each of these issues.

Cathey testified that, prior to his February draw request, there had been no complaints about Double K's work. Alvarez described the situation differently. He criticized Double K's installation of a waterfall in the Spa and its construction of a horse-washing station. He complained that the Spa Addition still needed ceiling, painting, and electrical work and that the Wildlife House needed hot water and painting work. Cathey responded that Rough Creek altered projects after they were started and, in one instance, after it was completed and that Rough Creek was complaining about some items that he had not heard of before. He also testified that Double K's work was done correctly.

The parties disputed whether Double K's work was performed timely. Alvarez contended that Cathey promised to finish the Wildlife House by Super Bowl Sunday. Cathey denied ever agreeing to do so. He testified that he had promised to do his best to complete the work by then but

---

[1] The charge instructed the jury:

> (a) A contractor is authorized by law to suspend further work on the 10th day after the occurrence of both of the following circumstances: (1) within 35 days of receiving a written request for payment for an amount that is allowed to the contractor under the contract for properly performed work, the owner fails to pay the undisputed amounts; and (2) thereafter, the contractor gives the owner written notice that the payment has not been received and stating the intent of the contractor to suspend work for nonpayment.

> (b) Further performance under the agreement is not required if the owner's conduct (1) amounted to a material breach of the agreement that justified the contractor refusing further performance or (2) that prevented the contractor's further performance.

3

that their work was slowed down by the discovery of a den of rattlesnakes under the house, by Rough Creek's decision to special order shutters, and by weather. By e-mail dated March 2, Alvarez advised Cathey that his boss had given Alvarez a drop dead date of March 11 to complete the remaining remodeling work. Alvarez acknowledged that this was a unilaterally selected date. Cathey testified that the March 11 date was impossible to meet because of factors beyond his control. He also testified that Double K had been very busy with other projects in March and that it was April 7 before he was able to see the light of day.

When Cathey submitted his February draw request, he had $21,475.11 in outstanding bills. He went over the draw request with Alvarez and expected to be paid. Alvarez testified that Rough Creek was shocked by Double K's request and denied agreeing to pay it. Rough Creek had been paying "like clockwork" but, because Double K was nearing the end of the projects, Alvarez decided to slow the payments down until everything was completed. Consequently, Rough Creek paid only $22,000.

On March 7, Cathey and Alvarez met at Home Depot and purchased materials for the Cabin project. According to Cathey, Alvarez asked him to pay for the materials and said that he was holding a check and he would release it as soon as the punch list items were completed. On March 18, Alvarez sent Cathey an e-mail. Alvarez indicated that he had deposited $4,000 in the bank for Double K, that he had $6,000 in additional checks, and that he could get the balance when the jobs were completed and the accounts reconciled. He asked Cathey to send him spreadsheets and invoices. He also set out several punch list items.

Cathey testified that Alvarez told him the invoices were being requested to verify that sales tax had been paid. Cathey assured Alvarez that all sales taxes had been paid. He also told Alvarez that, if Rough Creek would send him $400 to cover his time and expenses for copying the invoices, he would provide copies within seven business days. Alvarez refused to pay Double K any more money until the work was completed. He testified that everyone always understood that the parties would settle up at the end and that Double K would have to "true up" its charges. He also testified that Cathey had previously agreed to provide the invoices.

Because of the payment dispute, Cathey decided to "draw a line in the sand." On April 7, he sent Alvarez an e-mail and advised him that he was at a stopping point until he received another draw. He asked Alvarez to deposit the $6,000 he was holding into Double K's account.

Alternatively, he asked Alvarez to pay an outstanding $2,000 supplier bill. Despite his threat, Cathey sent out a worker to address the punch list items. Alvarez responded the same day and again refused to pay any more money until the work was complete. For the first time, he referenced retaining 10% of the contract. Even though retained funds secure payment of vendors and subcontractors,[2] when Rough Creek received a bill and demand letter from a supplier for materials used on the remodeling projects, it refused to pay it. Alvarez testified that Rough Creek intended instead to keep the 10% until reaching an agreement with Cathey.

Unbeknownst to Alvarez, his boss Cary Platt sent Double K a certified letter dated April 6. Platt essentially accused Cathey of abandoning the job site. Platt contended that there had been no one on the job site for thirty days (Alvarez agreed that this was untrue), and he gave Cathey five days to respond. Cathey responded with his own certified letter. He took issue with many of Platt's factual contentions, and he denied any wrongdoing. Cathey demanded payment of $15,968.11 for unpaid bills and $18,085.41 for unpaid contractor fees. He included copies of unpaid bills. Alternatively, he gave Platt the opportunity to pay the outstanding bills directly. Finally, he stated that, if not paid in five days, he would file a lien.

Alvarez retained another contractor to finish the remodeling projects and to repair problems he attributed to Double K's work. Rough Creek received Double K's invoices through discovery. Alvarez reviewed these and contended that they did not match up with Double K's prior charges. He noticed that some items had been returned but that Rough Creek's bill was not credited. He also contended that there were missing invoices for $7,409.86. But, he agreed that, following his audit, Rough Creek still owed Double K $15,384.11.

### 4. Is the Evidence Sufficient?

Cathey and Alvarez disputed whether Double K performed all required work, performed it timely, and performed it in a good and workmanlike manner. Because a juror could find Cathey's testimony credible, we must defer to the jury's credibility determination. Cathey's testimony is factually and legally sufficient to establish that Double K performed its work timely and in a good

---

[2]*See* TEX. PROP. CODE ANN. § 53.102 (Vernon 2007).

and workmanlike manner. The question is whether the evidence is sufficient to establish that Double K performed all required work or that it had an excuse not to.

Rough Creek contends that the charge required Double K to completely rather than substantially perform all required work, and its brief contains an exhaustive list of unfinished items. Many of these are matters that Double K denied responsibility for, and we must defer to the jury's determination of them. Others could be characterized as replacement or repair work. Because the charge excepted this from its definition of actual completion, we must defer to the jury's verdict on these as well. Our deference, however, does not resolve this dispute because, on April 7, Cathey sent Alvarez an e-mail in which he said that Double K had completed 95% of the Cabin project but that it was suspending any further work until it received another draw. Because Double K's e-mail acknowledged that work remained on at least one project, it cannot claim that it completed all required work but must show that it was excused from doing so.

The jury charge instructed the jury that complete performance was not required in two instances. The first required proof that Double K submitted a written request for payment of an allowed amount for properly performed work, that Rough Creek did not pay within thirty-five days of receiving that request, and that Double K then provided written notice of its intent to suspend work within ten days if payment was not received.[3] The only written notice of Double K's intent to suspend work was Cathey's April 7 e-mail. In that e-mail, Cathey did not threaten to suspend work if Double K was not paid in ten days but announced that Double K was at a stopping point now. Furthermore, Cathey admitted at trial that his draw request contained an error and that he had demanded $2,000 more than he was entitled to receive. Double K, therefore, was not excused from further performance under this instruction.

In the charge, the jury was also instructed that further performance was not required following a material breach of the agreement by Rough Creek that justified refusing further performance or that prevented further performance. Rough Creek contends that this instruction is immaterial given the plain language of question one. We disagree. The instruction and issue must

_____

[3]The parties advise us that this instruction was based upon TEX. PROP. CODE ANN. § 28.009(a) (Vernon 2000). Because there are some distinctions between the court's instruction and this statute, we have limited our consideration to the instruction.

be read together. In this instance, the jury was required to determine if Double K completely performed its work until Rough Creek's conduct excused further performance.

Even though Cathey's April 7 e-mail indicated that Double K would perform no further work until paid, he sent workers to address punch list items. Rough Creek did not allow him to do any work because it had already hired another company. The jury could, therefore, determine that, as of April 7, Double K was prevented from further performance.

The jury could also find that Rough Creek materially breached the agreement and that this excused further performance. The parties' disagreements surfaced after Cathey's February draw request. Previously, Rough Creek had paid draw requests without dispute. But it paid only a portion of the February request and continually conditioned further payment of even undisputed amounts upon completion of its punch list – which because of the parties' dispute was not an agreed list. It unilaterally imposed a deadline for the completion of all work. Each of these actions could be considered a material breach.

Because this dispute concerns a series of oral contracts and because the parties disputed their contractual obligations, credibility was an issue. The jury had cause to discredit Alvarez's testimony. He justified not paying Double K because Rough Creek was retaining 10% of the contract as required by law,[4] but he refused to use the retainage to pay a supplier for materials used at the resort. He also justified not paying Double K because Cathey did not provide Rough Creek with a copy of his invoices, but a juror could question this. Cathey sent an accounting and a copy of his unpaid bills to Platt by letter dated April 12. Even though Alvarez was Rough Creek's corporate representative and the one responsible for reconciling the books, he was unaware of the letter until trial because Platt did not forward it or keep a copy of the invoices. Finally, even after Alvarez received Double K's invoices through discovery and he determined that Rough Creek owed an additional $15,384.11, Rough Creek still did not pay. Alvarez admitted that Rough Creek intended to withhold payment until it reached an agreement with Double K "on everything." The jury could reasonably find that this was the sole reason for not paying and that it was done to force Double K into a more favorable agreement.

---

[4]*See* TEX. PROP. CODE ANN. § 53.101 (Vernon 2007).

7

The evidence is legally and factually sufficient to support the jury's answer to question one. Rough Creek's first and second issues are overruled.

### B. Did the Trial Court Err by Utilizing a Broad-Form Liability Question?

Rough Creek next argues that the trial court improperly utilized a broad-form liability question because it commingled valid and invalid liability grounds. Rough Creek reasons that it is impossible to know if the jury found that Double K completely performed all required work, or that it was entitled to suspend further work, or that it was excused from further performance.

Double K answers that Rough Creek has waived this issue because it was not properly briefed. TEX.R.APP.P. 38.1(h) provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." This requires a specific argument and analysis showing that the record and the law support the contention. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 198-99 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We must interpret this requirement reasonably and liberally. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004). Rough Creek's brief satisfies this standard.

The trial court's submission of jury questions and instructions is reviewed under an abuse of discretion standard, recognizing that broad-form submission of questions is favored in Texas. *Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.—El Paso 2005, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). In reviewing jury charges, we consider the pleadings, the evidence presented at trial, and the charge in its entirety. *De Leon v. Furr's Supermarkets, Inc.*, 31 S.W.3d 297, 300 (Tex. App.—El Paso 2000, no pet.). Even if the trial court abuses its discretion, we may not reverse unless the error, when viewed in light of the totality of the circumstances, the error amounted to such a denial of the rights of the complaining party as was reasonably calculated to and probably did cause rendition of an improper judgment. *Id.* Whether the charge submits the proper controlling issues in the case, in terms of theories of recovery or defense, is a question of law, that we review de novo. *Fin. Ins. Co.*, 166 S.W.3d at 926.

Trial courts are required, whenever feasible, to utilize broad-form questions in their jury charge. *See* TEX. R. CIV. P. 277. But the Texas Supreme Court has recognized that in some

instances this broad-form preference must defer to a granulated submission. In *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000), the court held that it was error to utilize a single broad-form liability question combining five distinct DTPA-based theories of liability with eight other theories because the plaintiff lacked standing to assert four of the five DTPA theories. The court found that this error was harmful because a reviewing court could not determine whether the jury based its verdict on a valid or invalid theory of liability. In *Harris County v. Smith*, 96 S.W.3d 230, 231 (Tex. 2002), the trial court asked the jury to determine a lump sum damage award for each plaintiff, and it listed the elements that the jury could consider. Unfortunately, there was no evidence for some of the listed elements. The court held that the rationale in *Casteel* applied and that instructing the jury to consider elements for which there was no evidence was harmful. *Id.* at 236. Similarly, in *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212 (Tex. 2005), the court held that there was no evidence to support the submission of a malicious credentialing claim and that it was harmful error to utilize a broad-form apportioning issue because it allowed the jury to consider both the invalid credentialing claim and a separate, valid negligence claim. *Id.* at 215.

Not all charge errors, however, are harmful. In *Bed, Bath & Beyond v. Urista*, 211 S.W.3d 753 (Tex. 2006), the trial court erroneously submitted an unavoidable accident instruction. The court found that harm could not be presumed and that, when it reviewed the entire record, it could not conclude that the instruction caused the case to be decided differently than it would have been otherwise. *Id*. at 758. The court distinguished *Casteel* and *Harris County* by noting that they dealt with multiple theories of liability and multiple damage elements but that this case concerned a single liability theory. *Id.* at 756-57; *see also Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835 (Tex. App.—Fort Worth 2003, pet. denied) (allegations of multiple acts of negligence are not separate theories of liability and do not make a broad-form submission improper).

This case is much closer to *Urista* than *Casteel* or *Harris County*. Unlike *Casteel*, Double K asserted a single cause of action: breach of contract. Merely because this required the resolution of multiple fact questions does not convert it into multiple theories of liability. Unlike *Harris County*, the jury was not instructed to consider an element of damage for which there was no evidence. While we do not know the jury's exact thought process, we do know that there is sufficient evidence to support its determination that Rough Creek breached its agreement with Double K. The liability

question could have been rephrased – although we note that Rough Creek did not object to the form of that question, and the jury should not have been asked if Double K completed its work or instructed that it could suspend its work, but to accept Rough Creek's argument that this was harmful would require either that we disregard *Urista* and presume harm, or that we disregard Rule 277 and encourage granulated charges. Because we can do neither, the third issue is overruled.

### C. Did the Trial Court Err by Denying Rough Creek's Motion to Add the Defense of Excessive Demand by Trial Amendment?

After both sides rested, Rough Creek orally requested leave to amend its answer to include the defense of excessive demand, contending that this issue had been tried by consent. Double K objected. The trial court denied Rough Creek's request, stating that the matters giving rise to this defense were clearly known by both sides well before trial started and that it could have been easily included in a pleading. The court also expressed some doubt that the issue had been tried by consent because the evidence went to other issues in the case.

We review a trial court's order granting or denying a request for a trial amendment under an abuse of discretion standard. *Chase Manhattan Mort. Corp. v. Cook*, 141 S.W.3d 709, 716 (Tex. App.—Eastland 2004, no pet.). A trial court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment contains the assertion of a new cause of action or defense and, thus, is prejudicial on its face and the opposing party objects to the amendment. *Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 881 (Tex. App.—Eastland 2002, pet. denied). The burden of showing prejudice or surprise rests on the party resisting the amendment. *Id.* Surprise may be shown on the face of the amendment when it would reshape the cause of action to the prejudice of the other party. *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 492 (Tex. App.—Corpus Christi 1990, writ denied). When the record shows a lack of diligence in bringing the amendment and when the matter appears to have been known by the party seeking to amend and is not based on any newly discovered facts, the court does not abuse its discretion in refusing to allow the amendment. *Chase Manhattan*, 141 S.W.3d at 716. When an amended pleading is prejudicial on its face and the trial court denies leave to file the amended pleading, the burden shifts to the party who offered the amended pleading to clearly demonstrate on appeal that the trial court abused its discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980).

10

Rough Creek's trial amendment was prejudicial on its face because it added a new defense. Rough Creek did not assert that this defense was based upon any newly discovered facts but instead reiterated a position taken well before suit was filed: that Cathey's pre-suit demand was for more than Double K was entitled to receive. The trial court did not abuse its discretion by denying Rough Creek's trial amendment, and the fourth issue is overruled.

IV. *Holding*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

February 5, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

11