Opinion filed September 24, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed September
24, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00017-CV 

                                                    __________

 

                                CARMEN ELAINE PERRY, Appellant

 

                                                             V.

 

                                        DOYLE
P. PERRY, Appellee

 



 

                                         On
Appeal from the 411th District Court

 

                                                     San
Jacinto County, Texas

 

                                                Trial
Court Cause No. DV 12,455

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

This
is a divorce proceeding.  The trial court divided the parties= property, named them joint
managing conservators of their children, and granted Doyle P. Perry the
exclusive right to designate the children=s
residence.  We affirm.

                                                             I. 
Background Facts








Doyle
and Carmen Elaine Perry were married in 1986, divorced in 1993, and remarried
in 1994.  They had three children during their two marriages:  a daughter and
two sons.  We will refer to the children by pseudonyms, using April for their
daughter and Nathan and Adam for their sons.  Pending their trial, the parties
agreed that Adam would live with Carmen and that April and Nathan would live
with Doyle.  They also agreed upon a visitation schedule.  Doyle further agreed
to pay Carmen $1,500 per month, and the parties agreed to an early trial date. 
The trial court conducted a bench trial, appointed the parties joint managing
conservators of the children, granted Doyle the exclusive right to designate
the children=s primary
residence, and divided the couple=s
property. 

                                                                       II. 
Issues

Carmen
challenges the trial court=s
judgment with five issues.  Carmen does not challenge Doyle=s right to designate April=s residence but argues that
the trial court abused its discretion when it granted him the right to
determine the boys=
residence or, alternatively, that the evidence was legally or factually
insufficient to support the trial court=s
decision; that the trial court abused its discretion when it divided the
community property or, alternatively, that the evidence was insufficient to
support the trial court=s
community property division; and that the trial court erroneously entered a
written conclusion of law based on evidence not found in the record. 

                                                          III. 
Children=s
Residence

A. 
Standard of Review.

The
trial court=s decision
to grant Doyle the right to determine the children=s residence is reviewed for an abuse of
discretion.  Tate v. Tate, 55 S.W.3d 1, 5-6 (Tex. App.CEl Paso 2000, no pet.). 
The term Aabuse of
discretion@ is not
susceptible to rigid definition. Landon v. Jean-Paul Budinger, Inc., 724
S.W.2d 931, 934 (Tex.App.CAustin
1987, no writ). The test for an abuse of discretion is not whether, in the
opinion of the reviewing court, the facts present an appropriate case for the
trial court=s action
but whether the court acted without reference to any guiding rules and
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985). Stated differently, the
appropriate inquiry is whether the ruling was arbitrary or unreasonable.  Landry
v. Travelers Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that
a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.  Sw. Bell Tel. Co. v.
Johnson, 389 S.W.2d 645, 648 (Tex. 1965).








When,
as here, a party challenges the sufficiency of the evidence to support a
discretionary decision, we employ a two-pronged analysis:  (1) Did the trial
court have sufficient information upon which to exercise its discretion? and
(2) Did the trial court err in its application of discretion?  Lindsey v.
Lindsey, 965 S.W.2d 589, 592 (Tex. App.CEl
Paso 1998, no pet.). We apply the traditional sufficiency review to the first
question. Id.  A trial court=s
findings of fact in a bench trial are reviewed for legal and factual sufficiency
under the same standards used to review
a jury=s verdict on
jury questions. Girdner v. Rose, 213 S.W.3d 438, 445 (Tex. App.CEastland 2006, no pet.). 
In considering a legal sufficiency
challenge, we review all the evidence in the light most
favorable to the prevailing party and indulge every inference in their favor.  City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  In reviewing a factual sufficiency challenge, we
consider all of the evidence and uphold the finding unless the evidence is too
weak to support it or the finding is so against the overwhelming weight of the
evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).  We review the trial court=s conclusions of law de
novo.  Smith v. Smith, 22 S.W.3d 140, 143-44 (Tex. App.CHouston [14th Dist.] 2000,
no pet.).

Once
we have determined whether sufficient evidence exists, we then must decide
whether the trial court made a reasonable decision.  Lindsey, 965 S.W.2d
at 592-93.  In other words, we must conclude that the court=s decision was not
unreasonable or arbitrary.  Duran v. Garcia, 224 S.W.3d 309, 313 (Tex.
App.CEl Paso 2005, no
pet.).  An abuse of discretion does not occur as long as some evidence of a
substantive and probative character supports the trial court=s decision.  See In re
Gonzalez, 993 S.W.2d 147, 155 (Tex. App.CSan
Antonio 1999, no pet.).

The
trial court=s primary
responsibility was to determine the best interest of the children.  Tex. Fam. Code Ann. ' 153.002 (Vernon 2008). 
Texas courts traditionally apply the AHolley
factors@ B a non-exhaustive list of
considerations for determining a minor=s
best interest.  See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976).  These include the desires of the child, the emotional and physical
needs of the child now and in the future, the emotional and physical danger to
the child now and in the future, the parental abilities of the individuals
seeking custody, the programs available to assist these individuals to promote
the best interest of the child, the plans for the child by these individuals or
by the agency seeking custody, the stability of the home or proposed placement,
the acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one, and any excuse for the acts or
omissions of the parent.  Bates v. Tesar, 81 S.W.3d 411, 434 (Tex. App.CEl Paso 2002, no pet.).








B. 
The Evidence.

The
trial court heard conflicting evidence on the boys= best interest.  Both parties were critical of
the other, both contended that they were the better parent, and both claimed
their home provided a better environment.  Doyle essentially alleged that
Carmen had abandoned the children.  Carmen never sought possession of, or
visitation with, April.  Carmen and Doyle agreed before trial that Nathan would
initially stay with Doyle and that Adam would stay with her, that Doyle would
have both boys in June, and that Carmen would have them in July.  Doyle kept
both boys in June, but Carmen did not come to Texas in July to get them.  Doyle
contended that Carmen never called to say that she was not coming; that she did
not check on the boys; and that, when Nathan called and left messages, she
never returned his calls.  Carmen denied ignoring Nathan=s phone calls.  She acknowledged not picking
up the boys but claimed that she was financially unable to do so because Doyle
was late paying his spousal support.

The
parties had disagreements over discipline issues, particularly concerning their
daughter April.  April had behavioral issues, and the family had attended
counseling sessions because of them.  The counselor recommended taking April to
a psychiatrist for medication, but Doyle decided not to do so.  He testified
that Carmen would hit and fight with April and that she screamed at the kids. 
He also testified that Carmen threatened to take the boys to Colorado if he did
not Aput April out.@  He acknowledged that he
lost his temper in response to this and that he threw some things B including paint.  Carmen
testified that she left because Doyle encouraged April to be violent with her,
that he would not support her, and that April would not listen to her because
of him.  She acknowledged screaming at April but denied screaming at the boys.

Nathan
suffered from spina bifida and was confined to a wheelchair.  Doyle contended
that the Coldspring house was better for Nathan because it had no stairs in the
front or back, because some of the family members Carmen was living with in Colorado
smoked, and because Medicare was remodeling the bathroom at the Coldspring
house to accommodate Nathan=s
condition.  Doyle also testified that the boys had several cousins who were
close to their age and who lived in the vicinity.  Carmen responded that, if
the boys lived with her in Colorado, they would move to the house where the
family lived when Doyle was stationed in Colorado.  This house was near parks,
a lake, an ice rink, tennis courts, and a swimming pool.  She testified that
Adam liked his Colorado teacher and that he would have the same teacher next
year.








Doyle
contended that he had the necessary arrangements in place to take care of
Nathan.  Medicare had hired a neighbor to take care of Nathan after school, 
April had watched the boys when it was necessary for Doyle to go to Houston,
and Doyle=s  mom lived
five miles away.  Carmen was critical of the fact that Nathan had gained weight
while in Doyle=s care
because his spina bifida made it crucial that he not be overweight.  She was
also concerned that April might hurt Adam.

Carmen
testified that she was better qualified to take care of Nathan=s special needs.  She had
been a stay-at-home mother prior to the parties=
separation and, therefore, had been responsible for dressing him; bathing him;
diapering him; and monitoring his bowels, bladder, and weight.  She was
critical of Doyle=s
ability, noting that prior to his retirement from the Army, he had worked
twelve hours a day and, therefore, lacked experience taking care of Nathan.

Nathan
signed a document indicating a preference to live with Carmen.  At some point
prior to trial, however, he told the trial court that he preferred to live with
Doyle.  Carmen asked the trial court to visit with Nathan again, and it
interviewed the boys in chambers.  Both indicated that they would prefer to
stay in Texas.

Both
boys expressed a preference for staying in Texas, and if the conflicting
evidence is resolved in Doyle=s
favor, it indicates that the Coldspring home provided a better environment for
Nathan and that Doyle was better equipped to handle all of the children. The
trial court, therefore, did not abuse its discretion when it found that the
children=s best
interest would be served by having Doyle responsible for designating their
primary residence.  Issues One and Two are overruled.

                                                             IV.
Property Division

Carmen
next complains of the trial court=s
division of the community estate and provides us with a litany of alleged
errors by the trial court, including:

* failing to list
the relevant factors it considered in dividing the property;

 

* not considering
Doyle=s fault in the
break up of the marriage or his wasting of 

  estate assets when
dividing the estate;

 

* making a
disproportionate award of the community estate to Doyle;

 

* not having a
proper inventory of the community estate;

 

* having no proper
evidence of the value of many estate items;

 








            * not awarding or
valuing many items discussed at trial; and

 

*arbitrarily
ordering Doyle to repay Carmen for her half of the equity in the  parties=   

  home  at $500
per month at 7% interest and, therefore, preventing her from             

  receiving her
complete share for years.

 

Carmen has
identified no error and, in many ways, has failed to comply with Tex. R. App. P. 38.1(h).  See Rough
Creek Lodge Operating, L.P. v. Double K Homes, Inc., 278 S.W.3d 501, 508
(Tex. App.CEastland
2009, no pet.) (an appellant=s
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record).  For example, Carmen
does not identify which estate items were improperly valued or were not
included in the trial court=s
judgment and does not explain how Doyle received a disproportionate share of
the estate.          Carmen provides no authority that the trial court was
required to have an inventory of the estate, and we have found none.  Carmen
alludes to a statement made by the trial court during the trial about a lack of
discovery, but Carmen fails to acknowledge that, per the parties= Rule 11 agreement, this
case was given an early trial setting.  There was considerable evidence that
both parties were at fault; therefore, the trial court did not err when it did
not award either party a disproportionate share of the estate.  The trial court
made findings of fact at Carmen=s
request, including findings concerning the separate property status of some
assets and the value of others.  The trial court referenced a letter opinion
that apparently discussed the division of property and debt. That letter
opinion is not part of our record.  Furthermore, Carmen did not request
additional findings of fact pursuant to Tex.
R. Civ. P. 298.  Thus, we cannot conclude that the trial court erred by
not making more findings.








We
assume Carmen=s
contention that Doyle wasted community assets refers to the credit card charges
he incurred during the parties=
separation.  If so, the trial court did not abuse its discretion because Doyle
was ordered to pay that debt.  Finally, Carmen provides this court with no
authority that the trial court lacked the discretion to divide the parties= equity in their house by
ordering Doyle to execute a promissory note in favor of Carmen.[1] 
We note, for example, that Carmen did not offer the trial court any evidence
that 7% interest was inadequate or object to the use of this rate. 
Furthermore, while Carmen complains that it will take too long to receive her
share of the home=s
equity, she was the one who suggested to the trial court using a $500 monthly
payment.  Issues Three and Four are overruled.

                                                                V. 
Child Support

Carmen
contends that the trial court erred by Aentering
a written conclusion of law based on erroneous evidence not in the record@ when it found that she was
capable of earning $15 per hour and that child support should be calculated
based upon this value.  Carmen earned $15 an hour while working in Texas at a
job that did not require a college degree.  She now has an MBA in accounting
and testified at trial that she expected to make between $12 and $20 an hour. 
The trial court=s
finding is well supported, and Issue Five is overruled.

                                                                    VI. 
Holding 

 
The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

September 24,
2009

Panel consists of: Wright, C.J., 

McCall, J., and Strange, J.









     [1]It is well
established that a divorce court may impose an equitable lien against community
property to secure one spouse=s obligation to
pay a monetary award that represents the consideration for the other spouse=s relinquishment of his or her interest in the marital
estate.  Bell v. Bell, 540 S.W.2d 432, 441 (Tex. Civ. App.CHouston [1st Dist.] 1976, no writ).