**Opinion filed September 24, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00017-CV

———————

## CARMEN ELAINE PERRY, Appellant

## V.

## DOYLE P. PERRY, Appellee

**On Appeal from the 411th District Court**

**San Jacinto County, Texas**

**Trial Court Cause No. DV 12,455**

### M E M O R A N D U M   O P I N I O N

This is a divorce proceeding. The trial court divided the parties' property, named them joint managing conservators of their children, and granted Doyle P. Perry the exclusive right to designate the children's residence. We affirm.

### I. *Background Facts*

Doyle and Carmen Elaine Perry were married in 1986, divorced in 1993, and remarried in 1994. They had three children during their two marriages: a daughter and two sons. We will refer to the children by pseudonyms, using April for their daughter and Nathan and Adam for their sons.

Pending their trial, the parties agreed that Adam would live with Carmen and that April and Nathan would live with Doyle. They also agreed upon a visitation schedule. Doyle further agreed to pay Carmen $1,500 per month, and the parties agreed to an early trial date. The trial court conducted a bench trial, appointed the parties joint managing conservators of the children, granted Doyle the exclusive right to designate the children's primary residence, and divided the couple's property.

## II. *Issues*

Carmen challenges the trial court's judgment with five issues. Carmen does not challenge Doyle's right to designate April's residence but argues that the trial court abused its discretion when it granted him the right to determine the boys' residence or, alternatively, that the evidence was legally or factually insufficient to support the trial court's decision; that the trial court abused its discretion when it divided the community property or, alternatively, that the evidence was insufficient to support the trial court's community property division; and that the trial court erroneously entered a written conclusion of law based on evidence not found in the record.

## III. *Children's Residence*

### A. *Standard of Review.*

The trial court's decision to grant Doyle the right to determine the children's residence is reviewed for an abuse of discretion. *Tate v. Tate*, 55 S.W.3d 1, 5-6 (Tex. App.—El Paso 2000, no pet.). The term "abuse of discretion" is not susceptible to rigid definition. *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 934 (Tex.App.—Austin 1987, no writ). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

When, as here, a party challenges the sufficiency of the evidence to support a discretionary decision, we employ a two-pronged analysis: (1) Did the trial court have sufficient information upon

which to exercise its discretion? and (2) Did the trial court err in its application of discretion? *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). We apply the traditional sufficiency review to the first question. *Id.* A trial court's findings of fact in a bench trial are reviewed for legal and factual sufficiency under the same standards used to review a jury's verdict on jury questions. *Girdner v. Rose*, 213 S.W.3d 438, 445 (Tex. App.—Eastland 2006, no pet.). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party and indulge every inference in their favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143-44 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Once we have determined whether sufficient evidence exists, we then must decide whether the trial court made a reasonable decision. *Lindsey*, 965 S.W.2d at 592-93. In other words, we must conclude that the court's decision was not unreasonable or arbitrary. *Duran v. Garcia*, 224 S.W.3d 309, 313 (Tex. App.—El Paso 2005, no pet.). An abuse of discretion does not occur as long as some evidence of a substantive and probative character supports the trial court's decision. *See In re Gonzalez*, 993 S.W.2d 147, 155 (Tex. App.—San Antonio 1999, no pet.).

The trial court's primary responsibility was to determine the best interest of the children. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). Texas courts traditionally apply the "Holley factors" – a non-exhaustive list of considerations for determining a minor's best interest. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Bates v. Tesar*, 81 S.W.3d 411, 434 (Tex. App.—El Paso 2002, no pet.).

*B. The Evidence.*

The trial court heard conflicting evidence on the boys' best interest. Both parties were critical of the other, both contended that they were the better parent, and both claimed their home provided a better environment. Doyle essentially alleged that Carmen had abandoned the children. Carmen never sought possession of, or visitation with, April. Carmen and Doyle agreed before trial that Nathan would initially stay with Doyle and that Adam would stay with her, that Doyle would have both boys in June, and that Carmen would have them in July. Doyle kept both boys in June, but Carmen did not come to Texas in July to get them. Doyle contended that Carmen never called to say that she was not coming; that she did not check on the boys; and that, when Nathan called and left messages, she never returned his calls. Carmen denied ignoring Nathan's phone calls. She acknowledged not picking up the boys but claimed that she was financially unable to do so because Doyle was late paying his spousal support.

The parties had disagreements over discipline issues, particularly concerning their daughter April. April had behavioral issues, and the family had attended counseling sessions because of them. The counselor recommended taking April to a psychiatrist for medication, but Doyle decided not to do so. He testified that Carmen would hit and fight with April and that she screamed at the kids. He also testified that Carmen threatened to take the boys to Colorado if he did not "put April out." He acknowledged that he lost his temper in response to this and that he threw some things – including paint. Carmen testified that she left because Doyle encouraged April to be violent with her, that he would not support her, and that April would not listen to her because of him. She acknowledged screaming at April but denied screaming at the boys.

Nathan suffered from spina bifida and was confined to a wheelchair. Doyle contended that the Coldspring house was better for Nathan because it had no stairs in the front or back, because some of the family members Carmen was living with in Colorado smoked, and because Medicare was remodeling the bathroom at the Coldspring house to accommodate Nathan's condition. Doyle also testified that the boys had several cousins who were close to their age and who lived in the vicinity. Carmen responded that, if the boys lived with her in Colorado, they would move to the house where the family lived when Doyle was stationed in Colorado. This house was near parks, a lake, an ice rink, tennis courts, and a swimming pool. She testified that Adam liked his Colorado teacher and that he would have the same teacher next year.

4

Doyle contended that he had the necessary arrangements in place to take care of Nathan. Medicare had hired a neighbor to take care of Nathan after school, April had watched the boys when it was necessary for Doyle to go to Houston, and Doyle's mom lived five miles away. Carmen was critical of the fact that Nathan had gained weight while in Doyle's care because his spina bifida made it crucial that he not be overweight. She was also concerned that April might hurt Adam.

Carmen testified that she was better qualified to take care of Nathan's special needs. She had been a stay-at-home mother prior to the parties' separation and, therefore, had been responsible for dressing him; bathing him; diapering him; and monitoring his bowels, bladder, and weight. She was critical of Doyle's ability, noting that prior to his retirement from the Army, he had worked twelve hours a day and, therefore, lacked experience taking care of Nathan.

Nathan signed a document indicating a preference to live with Carmen. At some point prior to trial, however, he told the trial court that he preferred to live with Doyle. Carmen asked the trial court to visit with Nathan again, and it interviewed the boys in chambers. Both indicated that they would prefer to stay in Texas.

Both boys expressed a preference for staying in Texas, and if the conflicting evidence is resolved in Doyle's favor, it indicates that the Coldspring home provided a better environment for Nathan and that Doyle was better equipped to handle all of the children. The trial court, therefore, did not abuse its discretion when it found that the children's best interest would be served by having Doyle responsible for designating their primary residence. Issues One and Two are overruled.

## IV. *Property Division*

Carmen next complains of the trial court's division of the community estate and provides us with a litany of alleged errors by the trial court, including:

* failing to list the relevant factors it considered in dividing the property;

* not considering Doyle's fault in the break up of the marriage or his wasting of estate assets when dividing the estate;

* making a disproportionate award of the community estate to Doyle;

* not having a proper inventory of the community estate;

* having no proper evidence of the value of many estate items;

5

* not awarding or valuing many items discussed at trial; and

　* arbitrarily ordering Doyle to repay Carmen for her half of the equity in the parties' home at $500 per month at 7% interest and, therefore, preventing her from receiving her complete share for years.

Carmen has identified no error and, in many ways, has failed to comply with TEX. R. APP. P. 38.1(h). *See Rough Creek Lodge Operating, L.P. v. Double K Homes, Inc.*, 278 S.W.3d 501, 508 (Tex. App.—Eastland 2009, no pet.) (an appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record). For example, Carmen does not identify which estate items were improperly valued or were not included in the trial court's judgment and does not explain how Doyle received a disproportionate share of the estate.

Carmen provides no authority that the trial court was required to have an inventory of the estate, and we have found none. Carmen alludes to a statement made by the trial court during the trial about a lack of discovery, but Carmen fails to acknowledge that, per the parties' Rule 11 agreement, this case was given an early trial setting. There was considerable evidence that both parties were at fault; therefore, the trial court did not err when it did not award either party a disproportionate share of the estate. The trial court made findings of fact at Carmen's request, including findings concerning the separate property status of some assets and the value of others. The trial court referenced a letter opinion that apparently discussed the division of property and debt. That letter opinion is not part of our record. Furthermore, Carmen did not request additional findings of fact pursuant to TEX. R. CIV. P. 298. Thus, we cannot conclude that the trial court erred by not making more findings.

We assume Carmen's contention that Doyle wasted community assets refers to the credit card charges he incurred during the parties' separation. If so, the trial court did not abuse its discretion because Doyle was ordered to pay that debt. Finally, Carmen provides this court with no authority that the trial court lacked the discretion to divide the parties' equity in their house by ordering Doyle to execute a promissory note in favor of Carmen.[1] We note, for example, that Carmen did not offer the trial court any evidence that 7% interest was inadequate or object to the use of this rate.

---

[1]It is well established that a divorce court may impose an equitable lien against community property to secure one spouse's obligation to pay a monetary award that represents the consideration for the other spouse's relinquishment of his or her interest in the marital estate. *Bell v. Bell*, 540 S.W.2d 432, 441 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ).

Furthermore, while Carmen complains that it will take too long to receive her share of the home's equity, she was the one who suggested to the trial court using a $500 monthly payment. Issues Three and Four are overruled.

## V. *Child Support*

Carmen contends that the trial court erred by "entering a written conclusion of law based on erroneous evidence not in the record" when it found that she was capable of earning $15 per hour and that child support should be calculated based upon this value. Carmen earned $15 an hour while working in Texas at a job that did not require a college degree. She now has an MBA in accounting and testified at trial that she expected to make between $12 and $20 an hour. The trial court's finding is well supported, and Issue Five is overruled.

## VI. *Holding*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


September 24, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7