

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00109-CV

---

BARBARA ANN BRAUER          APPELLANT

V.

MICHAEL GLEN BRAUER          APPELLEE

----------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In five issues, Appellant Barbara Ann Brauer contends that the trial court had no jurisdiction over this case, that the trial court erred by failing to apply applicable federal law and regulations, and that the trial court abused its discretion by awarding attorney's fees. Because we hold that the trial court did not reversibly err or abuse its discretion, we affirm the trial court's judgment.

## I. Background Facts

---

[1]*See* Tex. R. App. P. 47.4.

Barbara and Appellee Michael Glen Brauer divorced in 1990. In the property division, the trial court awarded Barbara fifty percent of the civil service retirement earned by Michael during the marriage. The decree further provides,

> IT IS FURTHER ORDERED that [Michael] shall not revoke, modify, amend, withdraw, or in any other form alter the designation of [Barbara], former spouse, the recipient of the Civil Service Retirement System [CSRS] Annuity.

> The Court finds . . . as follows:

> . . . .

> 5. That it is intended by the Court and the parties that the United States of America Office of Personnel Management [OPM] make the payments due to [Barbara] of her interest in the retirement benefits awarded in this decree directly to her . . . .

> IT IS THEREFORE FURTHER ORDERED AND DECREED that the [OPM] pay to [Barbara], former spouse, directly, her interest awarded above in the retirement benefit to be paid by the [CSRS] or Basic Plan of the Federal Employee Retirement System [FERS] . . . in the proportion that the amount of the retirement benefit awarded herein on a monthly basis to [Barbara] bears to the total monthly retirement benefit paid on a monthly basis, if, as, and when such retirement benefits are due to be paid.

> . . . .

> IT IS FURTHER ORDERED AND DECREED that all payments shall be made directly to [Barbara] at [her address] or such other address as may be provided in writing to the [OPM].

> IT IS FURTHER ORDERED AND DECREED that [Michael] is appointed a trustee for the benefit of [Barbara] to the extent of [her] interest awarded herein in the retirement benefits paid by the [CSRS] or by the Basic Plan of the [FERS]. [Michael] is ORDERED to pay [Barbara] her interest in same each month as it is received by [Michael] and in no event later than the 5th day of each month in which [he] receives such retirement pay following the date this final decree of divorce is signed by the Court. This paragraph shall be applicable to

2

the extent that the [OPM] fails to pay directly to [Barbara] the retirement benefits awarded to her herein, although it is anticipated by the Court that the [OPM] will make such payment directly.

For purposes of this decree, [Michael] is specifically directed to pay to [Barbara her] interest in the retirement benefits as received and no later than the 5th day of each month, upon penalty of being held in Contempt of Court if he fails to do so. [Michael] is specifically directed that he is not relieved of such obligation except in the event that he is specifically notified that the interest of [Barbara] in such retirement benefits has been paid directly to her by the [OPM].

IT IS FURTHER ORDERED AND DECREED that payment of all retirement benefits awarded herein to [Barbara] shall continue until the death of [Barbara].

But in September 1998, before any retirement benefits were paid to either party, they each signed a document providing that in exchange for Michael's payment to Barbara of the lump sum of $42,000 to be used by her as a down payment on a house, Barbara agreed to waive her portion of his retirement benefits. Michael also retained a five-year right of first refusal on the house Barbara planned to buy. The agreement additionally provided, "It is understood that Barbara . . . is freely accepting this revision to the divorce decree to facilitate purchase of the above noted residence."

In 2009, though, despite her earlier written agreement to waive her portion of the retirement benefits in exchange for $42,000, Barbara applied to the OPM for her share of the retirement benefits as provided in the decree, and the OPM began sending monthly payments to her. Michael sued for a declaratory judgment, filing his suit in the same court which granted the divorce.

In his first amended petition for declaratory judgment, Michael sought "judicial ratification and declaration of an agreement reached by the parties and memorialized in a writing signed by both parties." He also raised unjust enrichment and fraud claims and requested damages, exemplary damages, attorney's fees, interest on the judgment, and court costs.

After a bench trial, the trial court rendered judgment for Michael. In the judgment, the trial court designated Barbara as a trustee of any of the retirement benefits she receives and ordered her to turn over to Michael any retirement benefits immediately upon receipt. The trial court also granted Michael a judgment of $27,098.80 plus interest at the rate of 7.25% per year, which amount represents $15,506.80 already paid to Barbara from the retirement benefits and $11,592.00 of reasonable and necessary attorney's fees and costs. No one requested findings of fact or conclusions of law.

## II. Subject Matter Jurisdiction Under State Law

In part of her first issue as well as parts of her third and fourth issues, Barbara contends that state law deprived the trial court of subject matter jurisdiction over this matter. She bases this contention on the assertion that Michael's declaratory judgment action was a collateral attack on the divorce decree. But Michael's lawsuit was based on the written agreement that he and Barbara entered into several years after the divorce; the lawsuit did not challenge the original property division but instead challenged Barbara's later actions of seeking and receiving the retirement benefits despite having given them up in writing in exchange for $42,000 several

4

years after the divorce. This case is thus distinguishable from all the cases Barbara cites in support of her first issue. The trial court's judgment here did not modify the divorce decree; it enforced the written agreement entered into by the parties years after their divorce.

As the trial court stated,

> THE COURT: [Barbara's Trial Counsel], this is a contract action.
>
> [Barbara's trial counsel]: May we have . . . the Court's ruling that it is limited to a contract action?
>
> THE COURT: You certainly have. The Court has told you this is a contract action. The Court has told you that is the evidence the Court —the only issue raised by the petition for declaratory judgment is this contract . . . . That's as simple as I know how to do it.

We express no opinion on whether the trial court was the only proper trial court to preside over this case, but Texas law provides that the trial court had subject matter jurisdiction over this suit.[2] We overrule this part of Barbara's first issue and those portions of her third and fourth issues arguing that this order is an impermissible modification of the divorce decree.

## III. Subject Matter Jurisdiction Under Federal Law

In another part of her first issue and in part of her second issue, Barbara contends that the trial court lacked subject matter jurisdiction under the federal pre-emption doctrine. A defendant may raise a pre-emption argument for the first time

---

[2]*See* Tex. Gov't Code Ann. §§ 24.410, 24.601(a)–(b) (West 2004); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008) (providing that interested person under contract may seek declaratory relief).

5

on appeal only if the issue of pre-emption implicates the subject matter jurisdiction of the court, that is, the choice of forum rather than merely the choice of law.[3]

Barbara does not argue that this case belongs in federal court. She does argue in part that the OPM has exclusive jurisdiction over whether her revocation of her waiver of rights in the agreement is valid. But the OPM performs no adjudicatory functions; it instead "performs purely ministerial actions" in following the trial court's instructions.[4] Regulation 838.101(a)(2) provides,

> In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.[5]

Further, as our sister court in San Antonio has explained,

> While Congress charged the OPM with making the benefits determinations concerning federal civilian employees, it also mandated that the OPM avoid resolving disagreements between parties concerning the validity or the provisions of court orders. Congress

---

[3]*Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545 (Tex.), *cert. denied*, 502 U.S. 824 (1991); *see Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 397, 106 S. Ct. 1904, 1916 (1986).

[4]5 C.F.R. § 838.101(a)(2), (b) (2012); *see Naydan v. Naydan*, 800 S.W.2d 637, 640–41 (Tex. App.—Dallas 1990, no pet.); *Boniface v. Boniface*, 656 S.W.2d 131, 133–35 (Tex. App.—Austin 1983, no writ); *see also Harmand v. Harmand*, 931 So. 2d 18, 21–25 (Ala. Civ. App. 2005).

[5]5 C.F.R. § 838.101(a)(2) (2012).

6

provided that jurisdiction over such disagreements rests with the courts.[6]

We therefore hold that the trial court was an appropriate forum for this dispute and overrule those portions of Barbara's first and second issues raising subject matter jurisdiction.

## IV. Affirmative Defenses

### A. Federal Pre-emption

Barbara's remaining pre-emption argument is based on choice of law, not choice of forum. She argues in portions of her first four issues that the trial court had no choice but to apply the Federal Civil Services Retirement Act[7] and that federal law demanded a ruling in her favor despite the parties' agreement. Pre-emption in this case is therefore an affirmative defense.[8]

An affirmative defense generally must be set forth in a defendant's answer, or the issue will be waived.[9] But the law also allows affirmative defenses to be

---

[6]*Fagan v. Chaisson*, 179 S.W.3d 35, 45 (Tex. App.—San Antonio 2005, no pet.) (citations omitted).

[7]5 U.S.C.A. §§ 8331–51 (West 2007 & Supp. 2012).

[8]*See Gorman*, 811 S.W.2d at 546; *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex. App.—Dallas 2000, pet. dism'd w.o.j.).

[9]*See* Tex. R. Civ. P. 94; *Gorman*, 811 S.W.2d at 546; *Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 862 (Tex. App.—Fort Worth 2003, pet. denied).

preserved if they are raised in summary judgment pleadings[10] or the pleadings of other parties[11] or if they are tried by consent.[12] Barbara did not raise pre-emption in her answer or in a motion for summary judgment, nor do Michael's pleadings raise the issue. Our review of the reporter's record likewise reveals no indication that pre-emption was tried by consent.

Additionally, although Barbara filed an untimely amended answer raising the issue without the trial court's leave on the day of trial, the trial court did not accept that untimely amendment.[13] Finally, the record does not reflect that Barbara requested findings on pre-emption; she has therefore waived this complaint for

---

[10]See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co., 20 S.W.3d 692, 699 (Tex. 2000) (holding affirmative defense raised in response to motion for summary judgment preserved for appeal); Diamond v. Eighth Ave. 92, L.C., 105 S.W.3d 691, 694 (Tex. App.—Fort Worth 2003, no pet.) (same); see also Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494–95 (Tex. 1991) (holding same regarding affirmative defenses raised by motion for summary judgment without objection); Malone v. E.I. du Pont de Nemours & Co., 8 S.W.3d 710, 714–15 (Tex. App.—Fort Worth 1999, pet. denied) (same).

[11]See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980) (holding that even though one defendant did not raise affirmative defense, co-defendant and third-party defendant did raise it, preserving the issue); Horizon/CMS Healthcare Corp. v. Auld, 985 S.W.2d 216, 230–31 (Tex. App.—Fort Worth 1999) (holding unconstitutionality of statute was preserved even though plaintiff failed to raise it because defendant's pleadings raised it), rev'd in part on other grounds, 34 S.W.3d 887 (Tex. 2000).

[12]See Duncan Land & Exploration, Inc. v. Littlepage, 984 S.W.2d 318, 327–28 (Tex. App.—Fort Worth 1998, pet. denied) (holding illegality was properly raised via trial by consent even though it was not pled).

[13]See Tex. R. Civ. P. 63.

appeal.[14] We overrule the remainder of her second and fourth issues and those portions of her first and third issues raising federal pre-emption.

## B. Breach of Fiduciary Duty

For the same reasons, Barbara's subissues in her first and third issues contending that Michael breached his fiduciary duty to her also fail.[15] Barbara did not raise Michael's alleged breach of fiduciary duty in her answer or in a motion for summary judgment, nor do Michael's pleadings raise the issue.[16] The following occurred at trial:

> THE COURT: . . . Let me accept your argument that the Court did make him a—a—
>
> [Barbara's trial counsel]: Trustee, Your Honor.
>
> THE COURT: —trustee.
>
> [Barbara's trial counsel]: Yes, sir.
>
> THE COURT: What relevance does that have to this agreement that these parties made?

---

[14]*See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex. 1988); *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 143 n.12 (Tex. App.—Fort Worth 2011, pet. denied) (noting that defendant had burden to secure jury finding on limitations defense); *Cotton v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth 2006, pet. denied) (holding that party asserting affirmative defense must request findings in support thereof to avoid waiver).

[15]*See, e.g.*, *Martin v. Martin*, 287 S.W.3d 260, 261–62 (Tex. App.—Dallas 2009, pet. denied) (treating breach of fiduciary duty as a "common-law affirmative defense" to enforcement of an agreement).

[16]*See* Tex. R. Civ. P. 94; *Keck*, 20 S.W.3d at 699; *Roark*, 813 S.W.2d at 494–95; *Gorman*, 811 S.W.2d at 546; *Land Title Co.*, 609 S.W.2d at 756.

[Barbara's trial counsel]: Whether he—whether he fulfilled his duties as trustee in the self-dealing that he engaged in with [Barbara].

THE COURT: There's been no allegation—there's been—that hasn't been raised in anything . . . . Do you have pleadings alleging that?

[Barbara's trial counsel]: I believe there—there is allegation of that—violation of these duties, Your Honor.

THE COURT: [Michael's trial counsel], do you agree?

[Michael's trial counsel]: I'm a little lost on that, Your Honor.

THE COURT: I'm very lost. I . . . .

[Barbara's trial counsel]: Well, sir, in [Barbara's] motion to dismiss—

THE COURT: Right.

[Michael's trial counsel]: But that was denied, Your Honor.

THE COURT: That—that—there—that's been ruled on . . . .

[Barbara's trial counsel]: Now, this was—this—

THE COURT: Where is the answer? Has there been an answer filed here?

[Michael's trial counsel]: Yes, sir, there—and, in fact, I got one yesterday.

[Barbara's trial counsel]: Just this morning, yes, sir.

THE COURT: Was it filed within seven days of trial?

[Michael's trial counsel]: No, sir, not— not the amended answer. No, sir.

[Barbara's trial counsel]: No. There's been an answer on file earlier, Your Honor.

THE COURT: Where is it?

10

[Barbara's trial counsel]: Oh, actually, the answer was filed back before I got into the case, Your Honor, and then we filed an amended answer.

THE COURT: Wait a minute.

[Barbara's trial counsel]: But anyway—

THE COURT: There's no affirmative defenses raised in this answer of that nature . . . . Unless [Michael's trial counsel] agrees to try those issues by consent, I can't allow you to do that.

[Michael's trial counsel]: I'm not going to consent to that, Your Honor. I mean, I—if this is a contractual action, as the Court has deemed it to be—

THE COURT: I didn't deem it to be, you deemed it to be by your petition.

[Michael's trial counsel]: Well, yes, sir. If the Court deems this to be—

THE COURT: If you can show me an answer that raises contractual defenses . . . . But I don't see any here.

[Barbara's trial counsel]: All right, sir.

We therefore conclude that the issue was not tried by consent.[17] Barbara also did not request or obtain findings as to Michael's alleged breach of fiduciary duty; she has therefore waived these subissues.[18]

We overrule the remainder of her first issue and the portion of her third issue contending that Michael breached his fiduciary duty to her.

---

[17] *See Duncan,* 984 S.W.2d at 327–28.

[18] *See Woods*, 769 S.W.2d at 517.

11

### C. Illegality of Agreement

Barbara raises illegality of the agreement for the first time in her reply brief. We therefore decline to address it.[19]

## V. Constructive Trust Issues

In another portion of her third issue, Barbara contends that the trial court erred by removing Michael as the trustee regarding the disputed benefits she receives. The divorce decree provides,

> IT IS FURTHER ORDERED AND DECREED that [Michael] is appointed a trustee for the benefit of [Barbara] to the extent of [her] interest awarded herein in the retirement benefits paid by the [CSRS] or by the Basic Plan of the [FERS]. [Michael] is ORDERED to pay [Barbara] her interest in same each month as it is received by [Michael] and in no event later than the 5th day of each month in which [he] receives such retirement pay following the date this final decree of divorce is signed by the Court. *This paragraph shall be applicable to the extent that the [OPM] fails to pay directly to [Barbara] the retirement benefits awarded to her herein*, although it is anticipated by the Court that the [OPM] will make such payment directly. [Emphasis added.]

Thus, the divorce decree named Michael as trustee over benefits due Barbara but paid to him by the OPM. But Barbara does not argue and there is no evidence that the OPM ever failed to pay her or that it has stopped paying her. Consequently, Michael's duty as trustee under the decree never materialized.[20]

---

[19]*See In re M.D.H.*, 139 S.W.3d 315, 318 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) ("A reply brief may not be used to raise new complaints.").

[20]*See Jackson v. Jackson*, 319 S.W.3d 76, 81 (Tex. App.—San Antonio 2010, no pet.) (concluding that husband never had obligation as trustee under divorce decree because he never received portion of wife's interest in his disposable retirement pay and she had no interest in the disability retirement pay that he did receive).

To the extent that Barbara's argument that the trial court's judgment "completely negated [Michael's] fiduciary duties to [her]" is a restatement of her argument that the trial court impermissibly modified the divorce decree, we again reject that argument for the reasons explained earlier in this opinion. Any elimination of Michael's fiduciary duties that has occurred has resulted from the separate agreement that Barbara signed with him years after the trial court signed the divorce decree. The trial court's declaratory judgment merely upheld the agreement that Michael and Barbara made. We therefore overrule this argument.

In the remainder of her third issue, Barbara contends that no evidence supports the trial court's imposition of a constructive trust designating her as a trustee regarding the disputed retirement benefits for the benefit of Michael.

We review the trial court's decision to impose a constructive trust under an abuse of discretion standard.[21] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[22] An appellate court cannot conclude that a trial court

---

[21]*Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007).

[22]*Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

13

abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[23]

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence and some evidence of substantive and probative character supports its decision.[24]

In a bench trial like this one, in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it.[25] When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. When such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact.[26] The judgment must be affirmed if it can be upheld on any legal theory that finds support in the record.[27]

---

[23]*E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

[24]*Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

[25]*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.).

[26]*Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

[27]*Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767 (Tex. 2011); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[28] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[29]

To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust or fiduciary relationship, or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res.[30]

A party commits fraud by (1) making a false, material misrepresentation (2) that the party either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person

---

[28]*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).

[29]*Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

[30]*Hubbard v. Shankle*, 138 S.W.3d 474, 485–86 (Tex. App.—Fort Worth 2004, pet. denied).

to whom the misrepresentation is made acts in reliance upon it (5) and is injured as a result.[31]

As Michael argues, the record contains some evidence of each element of fraud. Barbara entered into the agreement with Michael. To get the $42,000 for the down payment on her home, she expressly waived her right to the benefits she had been awarded years earlier in the divorce decree. Michael relied on her waiver and performed his side of the agreement by providing the money for the down payment. Barbara reneged on the agreement by applying for the retirement benefits, receiving them, and keeping them, forcing Michael to sue for recovery. Further, the evidence that Barbara never offered to refund the $42,000, her testimony that she did not receive the money (because it went to the bank for a down payment), and her submission of the divorce decree (but not the subsequent agreement) to the OPM eleven years after signing the subsequent agreement all support a finding that she knew at the time of signing the agreement that she was not going to honor her waiver of the retirement benefits or that she made that promise recklessly.[32] Thus, there is some evidence of actual fraud.

---

[31]*Lindley v. McKnight*, 349 S.W.3d 113, 128 (Tex. App.—Fort Worth 2011, no pet.); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 527 (Tex. App.—Fort Worth 2009, pet. denied).

[32]*See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made.").

Michael has also satisfied the tracing element necessary for the imposition of a constructive trust. As the Supreme Court of Texas has explained,

> A party seeking to impose a constructive trust has the initial burden of tracing funds to the specific property sought to be recovered. Once that burden is met, the entire . . . property will be treated as subject to the trust, *except in so far as the trustee may be able to distinguish and separate that which is his own.*[33]

In the case before us, it is clear that the res is the civil retirement benefits awarded Barbara in the divorce decree. Barbara stipulated to the admissibility of Michael's Exhibit No. 3, a June 23, 2009 letter from the OPM. The letter provides that Barbara claimed and that her portion of the retirement benefits payments began with Michael's May 1, 2009 payment. Thus, there is some evidence of the res and its location.

Finally, a party is unjustly enriched when she has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.[34] By putting on evidence that Barbara had been receiving (and continues to receive) payments from the OPM of the retirement benefits awarded to her in the divorce decree despite her having waived them in exchange for his payment to her of the $42,000, Michael has sufficiently proved that Barbara has been unjustly enriched and has therefore satisfied all the elements necessary for the trial court's imposition of the constructive

---

[33]*Wilz*, 228 S.W.3d at 676 (citations and internal quotations omitted).

[34]*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

17

trust.[35] We therefore cannot conclude that the trial court abused its discretion by imposing the constructive trust.[36]

To the extent that Barbara complains in her third issue that enforcing her agreement with Michael is unfair because he will then be unjustly enriched, the written agreement itself makes that equitable remedy inapplicable.[37] That is, in the absence of any affirmative defenses, the contract is enforceable, and because it is enforceable, he cannot be unjustly enriched—he is getting exactly what he bargained for. As for Barbara's fairness argument, as our sister court in Amarillo has reasoned, parties

> are considered masters of their own choices. *They are entitled to select what terms and provisions to include in a contract before executing it.* And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal they choose to strike and, thus, voluntarily bind themselves in the manner they choose. And, that is why parties are bound by their agreement as written.[38]

---

[35]*Cf. Schneider v. Schneider*, 5 S.W.3d 925, 929 (Tex. App.—Austin 1999, no pet.) (recognizing that declaratory judgment imposing constructive trust could be appropriate remedy in situation where former wife would otherwise receive 100% of the survivor retirement benefits despite being awarded only 31.9% of the retirement benefits in the divorce decree).

[36]*See id.*

[37]*See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (stating "when a party claims that it is owed more than the payments called for under a contract, there can be no recovery for unjust enrichment if the same subject is covered by the express contract") (citations and internal quotations omitted).

[38]*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (emphasis added).

Barbara chose to give up her portion of the retirement benefits in exchange for $42,000. She cannot now claim that she is entitled to more.

We overrule the remainder of Barbara's third issue.

## VI. Attorney's Fees

In her fifth issue, Barbara contends that the trial court abused its discretion by awarding attorney's fees because they are not authorized by statute and alternatively were not necessary and reasonable or equitable and just.

Within this issue, Barbara argues that Michael's pleadings do not entitle him to attorney's fees. By not timely filing a special exception to his petition, however, Barbara has waived all pleading defect complaints regarding attorney's fees.[39] Further, to the extent that she argues that the trial court's words, "The Court has told you this is a contract action. The Court has told you that is the evidence the Court— the only issue raised by the petition for declaratory judgment is this contract . . . . That's as simple as I know how to do it," bar this court from treating this suit as a declaratory judgment action when it has always been so denominated, she did not raise this complaint below and cites no authority for it. Further, the law provides that

---

[39]*See Chapman v. Chapman*, 172 S.W.2d 127, 128 (Tex. Civ. App.—Fort Worth 1943, writ dism'd); *see also Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.] 1996, no writ), *disapproved of on other grounds by Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008) (op. on reh'g); *Enochs v. Brown*, 872 S.W.2d 312, 320–21 (Tex. App.—Austin 1994, no writ), *disapproved of on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003).

a contract enforcement action can be brought as a declaratory judgment action.[40] She also contends that Michael failed to establish that the claim was presented under section 38.002 of the civil practice and remedies code.[41] But presentment is not required for attorney's fees awarded under the declaratory judgments act.[42]

Finally, Barbara contends that the attorney's fees are not reasonable, necessary, equitable, or just. Reasonable and necessary attorney's fees are allowed in declaratory judgment actions as long as they are equitable and just.[43] The reasonableness and necessity of the fees are issues of fact; whether they are equitable and whether they are just are issues of law.[44] Subject to those requirements, attorney's fees rest within the trial court's discretion.[45]

Barbara's only argument regarding the elements of reasonableness and necessity is that all attorney's fees incurred to prosecute the declaratory judgment

---

[40]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004.

[41]*See id.* § 38.002 (West 2008).

[42]*See id.* § 37.009; *Long Trusts v. Griffin*, 144 S.W.3d 99, 109 (Tex. App.—Texarkana 2004), *rev'd on other grounds,* 222 S.W.3d 412 (Tex. 2006); *Girdner v. Rose*, 213 S.W.3d 438, 447 (Tex. App.—Eastland 2006, no pet.); *Gorman v. Gorman*, 966 S.W.2d 858, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g); *Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc.*, 928 S.W.2d 56, 63 (Tex. App.—Fort Worth 1995), *rev'd in part on other grounds*, 936 S.W.2d 275 (Tex. 1996).

[43]Tex. Civ. Prac. & Rem. Code § 37.009 (West 2008).

[44]*Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004*)*; *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

[45]*Id.*

were of no value, and therefore unreasonable and unnecessary, because the trial court lacked subject matter jurisdiction. We have already rejected Barbara's arguments challenging the trial court's jurisdiction.

Moreover, Barbara's issue on appeal does not comport with her objection below. Michael's trial counsel testified,

> Your Honor, my name is Harry "Trey" Harris. I'm an attorney in good standing in the State of Texas. I have been for nine years. I was hired on this case last year on the 30th of July. I have—this case has gone—initially, we had difficulty serving Ms. Brauer. We had to do an order for substituted service. This case has gone to the federal court—the federal bankruptcy court twice, this case has gone to Judge McBryde once, on what I believe to be a very simple issue and what I think this Court will ultimately rule is a very simple issue.
>
> These—these parties had a contract, money changed hands, consideration was given, and all Mr. Brauer wants is for Mrs. Brauer to honor the contract, but Mr. Brauer has spent over $11,000.00 in attorney's fees in order to get Mrs. Brauer to honor the contract. I believe that my attorney's fees, ordinarily, in a matter like this, would be a lot less, but given how I've had to chase this case around from court to court, I feel that the attorney's fees requested in my request for relief are fair and equitable—

The following exchange then occurred:

[Barbara's trial counsel]: Your Honor, I—

[Michael's trial counsel]: —and are necessary for Mr. Brauer to pursue what should be a very simple claim.

[Barbara's trial counsel]: Your Honor, I'll—I'll object to this Court determining attorney's fees for work in other courts.

THE COURT: Overruled. Any further testimony as to your hourly rate or anything else . . . ?

[Michael's trial counsel]: Yes, sir. I bill—in this case, I billed at $200.00 an hour, and I have submitted to [Barbara's trial counsel] and to the

Court all of my billing sheets that substantiate the work done on this case, Your Honor. Now, that doesn't include all of today, but I still— I've spent, including trial prep, about three hours today getting ready for it. But it is what I've requested in my request for relief, and I believe that's consistent with—with a fair amount of attorney's fees, given the— given this action and the amount of research and work that went into it.

THE COURT: Cross-examination . . . ?

[Barbara's trial counsel]: No, sir.

Based on the above evidence, we uphold the trial court's award of the attorney's fees as reasonable and necessary.[46]

Barbara likewise makes no further argument regarding the just and equitable nature of the attorney's fees other than that the trial court lacked subject matter jurisdiction, which we have already rejected. We therefore further hold, given the record, that the trial court did not abuse its discretion by implicitly concluding that the attorney's fee award was equitable and just. We overrule Barbara's fifth issue.

---

[46]*See Garcia v. Gomez*, 319 S.W.3d 638, 640–41 (Tex. 2010); *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 513–15 (Tex. App.—Fort Worth 2011, pet. denied).

## VII.  Conclusion

Having overruled Barbara's five issues, we affirm the trial court's judgment.

 

LEE ANN DAUPHINOT  
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  September 20, 2012